WILLIAM LEONARD *et al.* Appellants, *vs.* HENRY L. AR-
NOLD *et al.* Appellees.

*Opinion filed February 16, 1910—Rehearing denied April 19, 1910.*

1. INJUNCTION—*when a bill should not be dismissed on motion
for preliminary injunction.* A bill in chancery should not be dis-
missed on motion for a preliminary injunction unless the injunc-
tion is the only relief sought.

2. SAME—*it is only when bill cannot be helped by amendment
that it will be dismissed on motion.* It is only when a bill cannot
be helped by amendment that it will be dismissed on motion, upon
the ground there is no equity apparent upon the face of the bill.

3. PLEADING—*when motion to dismiss is treated as a demurrer.*
The equity of a bill can only be questioned by demurrer or on the
hearing, but a motion to dismiss for want of equity apparent on
the face of the bill or for want of jurisdiction is treated as a de-
murrer, admitting all facts well pleaded by the bill.

4. SAME—*averment that land is classified too high or too low
is mere conclusion.* There being no invariable standard for classi-
fying lands in a drainage district, an averment that certain lands
were classified too high or too low is a mere conclusion.

5. DRAINAGE—*classifying lands involves exercise of discretion.*
The classifying of lands in a drainage district according to bene-
fits is a matter involving judgment and discretion on the part of
the commissioners, and the fact that other persons may consider
the classification unfair does not show that the commissioners
were influenced by improper motives.

6. SAME—*land owner has remedy at law against unfair classi-
fication.* A land owner who considers the classification unfair may
object that his land is marked too high and that of others too low,
and he may appeal to the county court to have the classification
reviewed in those respects, and he may have a further appeal to
the circuit court if the county court grants it, otherwise the county
court's judgment is conclusive.

7. SAME—*equity will not take jurisdiction to make new classi-
fication.* The statute providing for an appeal from the classifica-
tion of drainage commissioners affords a complete remedy to an
objecting land owner for the correction·of alleged inequalities in
the classification, and hence equity will not take jurisdiction to
make a new classification though the bill alleges the commission-
ers acted fraudulently, from selfish motives.

DUNN, CARTWRIGHT and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of LaSalle county; the Hon. RICHARD M. SKINNER, Judge, presiding.

BUTTERS & ARMSTRONG, for appellants:

The circuit court has no jurisdiction to dismiss a bill, of its own motion, prior to the term of court at which the court acquires jurisdiction to hear the bill upon its merits. *Duncan* v. *Bank*, 1 Scam. 261; *Beams* v. *Denham*, 2 id. 57.

Where a party has no adequate and complete remedy at law, a court of equity will assume jurisdiction and grant relief. *McNab* v. *Heald*, 41 Ill. 326; *Morris* v. *Thomas*, 17 id. 112; *Olds* v. *Cummings*, 31 id. 188.

The practice of dismissing a bill in chancery on motion is confined to cases where there is a want of equity upon the face of the bill and it is manifest that no amendment can help it, or where there is a want of jurisdiction. *Fisher* v. *Stone*, 3 Scam. 67; *Grimes* v. *Grimes*, 143 Ill. 550; *Thomas* v. *Adams*, 30 id. 37.

Fraud is one of the broadest grounds of equity recognized by the courts, and relief may be obtained against a judgment at law although the party might find a remedy by appeal or *certiorari*. *Nelson* v. *Rockwell*, 14 Ill. 375.

When the commissioners are guilty of fraud in making the rating and classification of the lands of the district so as to make their own lands bear less than their proportionate share and the lands of other owners more than their proportionate share of the cost of the improvement, a court of equity, in a proper case, will set aside the whole classification and direct a new one to be made. *Gauen* v. *Drainage District*, 131 Ill. 446.

JOHN GARLAND, D. L. DUNAVAN, and B. F. LINCOLN, for appellees:

There is no equity in appellants' bill. No fact is alleged by which the trial court could find a fraud was committed by the drainage commissioners. All the acts of the com-

missioners therein alleged to have been done and performed fell within their discretion and judgment as commissioners, acting honestly. *Morrell* v. *Drainage District,* 118 Ill. 139; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *Canal Comrs.* v. *East Peoria,* 179 id. 214; *Reynolds* v. *Drainage District,* 134 id. 268; *Wright* v. *Chicago,* 48 id. 285; *Elliott* v. *Chicago,* 48 id. 293.

The complainants had a complete remedy at law for all the grievances mentioned in their bill, of which remedy they have availed themselves. Farm Drainage act, secs. 24, 25; *Morrell* v. *Drainage District,* 118 Ill. 139; *Moore* v. *People,* 106 id. 377; *Drainage Comrs.* v. *Kelsey,* 120 id. 482; *People* v. *Carr,* 231 id. 502; *Reynolds* v. *Drainage District,* 134 id. 268.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Appellants, together with Andrew Hughes, filed a bill in chancery on May 13, 1909, to the June term of the circuit court of LaSalle county, in which they prayed that the court would decree that a new classification of all the lands in Union Drainage District No. 1 of the towns of Freedom and Ophir, in LaSalle county, should be made, and that, pending the hearing, Henry L. Arnold, the treasurer of said county, should be restrained from selling or attempting to sell the appellants' land, or any part thereof, to pay a delinquent special assessment extended upon the classification of the lands of said district, and for general relief. At the same time they gave notice that they would move the court on May 15 to grant the injunction as prayed in said bill, and on that day they did enter such motion. On May 27 the motion was heard upon the bill, the answer of some of the defendants, affidavits and oral testimony, and the court entered a decree finding that there was no equity stated in the bill; that the equities of the case were with the defendants, and that the complainants

were not entitled to the relief prayed for or to an injunction, and ordering that the injunction be refused, the prayer for relief denied and the bill dismissed.

The appellants insist that the court had no power to dismiss their bill on the hearing of a motion for a temporary injunction before the term to which the bill was addressed. The appellees insist that the cause was submitted for final determination and was heard upon issues joined, and that the bill was dismissed upon the merits of the whole case. This view is not sustained by the transcript of the record. The decree entered recites that the cause came on to be heard upon the "motion of the said complainants for an injunction, upon the bill of complaint duly sworn to by the said complainants, and upon the answer to the said bill of complaint of the said defendants, Joseph F. Garland, William Hughes and James J. Cantlin, signed and sworn to by them, and upon the several answers of the said other defendants above mentioned and the replication thereto, and also upon the affidavits of witnesses filed herein, * * * and also upon the testimony of witnesses sworn and examined in open court." In fact, no answer but that of the three defendants named appears in the record, and no replication, though the record is certified to be complete. But whether the issues were made up or not, the above recital is of a hearing of the motion for an injunction upon the pleadings and upon affidavits and evidence submitted. There is no finding of facts, but the court finds that there is no equity stated in the bill and that the complainants are not entitled to the relief prayed for, or to an injunction.

On a motion for a preliminary injunction a bill in chancery will not be dismissed unless the injunction is the only relief sought. (*Hummert* v. *Schwab,* 54 Ill. 142; *Brockway* v. *Rowley,* 66 id. 99.) The equity of a bill can only be questioned on demurrer or on the hearing. (*Brill* v. *Stiles,* 35 Ill. 305.) A motion to dismiss may be en-

tertained upon the ground that there is no equity apparent on the face of the bill or that the court has no jurisdiction, and in such case the motion is treated as a general demurrer, admitting all the facts well pleaded by the bill. (*Vicley* v. *Thompson,* 44 Ill. 9; *Grimes* v. *Grimes,* 143 id. 550; *Canal Comrs.* v. *Village of East Peoria,* 179 id. 214.) It is only where it is manifest that no amendment can help it that a bill will be dismissed on such a motion. (*Thomas* v. *Adams,* 30 Ill. 37.) It is necessary, therefore, to inquire whether the bill shows, on its face, that it is without equity.

The bill alleged the organization of the drainage district in November, 1907, comprising the lands of complainants, the commissioners and five others, and the election of the appellees Cantlin, Garland and Hughes as commissioners; that they made and filed with the clerk of the district a pretended classification roll containing all the lands of the district, a copy of which is set out in full, and a map of the lands of the district showing the relative size of the tracts of land, the names of the respective owners and the course of the proposed drain, a copy of which map is attached to the bill and made part thereof. The bill further alleged that the said commissioners wholly disregarded the provisions of the statute in making their rating and classification of said lands by conspiring and fraudulently confederating together to wrong and injure complainants, and to avoid the payment of their own just and fair proportion of the cost of said improvement according to the benefits received by their lands, made, returned and filed said rating and classification aforesaid by classifying certain of the tracts of land of divers owners thereof in tracts of less than forty acres, said tracts of land being then legally subdivided into tracts of forty acres and so described in the records, maps, plats and proceedings of said district,— that is to say, said commissioners, instead of rating and classifying the south-east quarter of the north-west quar-

ter of section 20, owned by said commissioner James J. Cantlin, in a tract of forty acres, as the same is legally subdivided, for the purpose of fraudulently reducing the assessment of said James J. Cantlin they wrongfully and fraudulently classified the said forty-acre tract in two parts by rating and classifying the north ten acres at fifty-five points and the south thirty acres at zero; that the same illegal, wrongful and fraudulent practice of classification was adopted with reference to the lands of George P. Bonnell and others; that said commissioners, for the purpose of fraudulently reducing the classification and assessment of the lands of said commissioner William Hughes, illegally and wrongfully carved out certain small tracts and portions from forty-acre tracts owned by said Hughes, said forty-acre tracts being properly and legally subdivided into tracts of forty acres each, and so improperly and fraudulently rated and classified them in tracts of less than forty acres, so that of the whole tract of one hundred and sixty acres owned by said Hughes but one tract of forty acres was rated at fifty-five points and one hundred and twenty acres was classified at zero, when, if fairly, honestly and legally made, said one hundred and sixty acres would all have been rated at upwards of fifty-five points; that if said lands of said commissioners Hughes and Cantlin had not been fraudulently rated and classified, as aforesaid, the north half of the eighty-acre tract of said Cantlin would have been rated at one hundred points and the south half thereof would have been rated at upwards of thirty points; that the same illegal and fraudulent practice of carving out small parcels or portions from forty-acre tracts was practiced in the classification of the lands of Margaret McGuire, who is a sister-in-law of commissioner Cantlin; that twelve acres of the south-west quarter of the north-east quarter of section 18 owned by Margaret McGuire was classified in two tracts,—one of four acres at zero and the other of eight acres at fifty-five points,—when all of the lands of said

Margaret McGuire are wet and greatly in need of drainage, and if fairly and honestly classified, according to benefits received from said drainage, would and should have been classified at nearly one hundred points; that said commissioners knowingly, willfully and fraudulently caused said ratings and said classification roll to be so made that their own lands, and the lands of said Margaret McGuire in particular, were classified manifestly too low, and so that such lands, and each tract thereof, should not bear their fair and just portion of the assessment and tax for the cost of said improvement, and that the lands of the other owners of land were not properly and fairly classified and rated on the graduated scale according to benefits, as shown on said roll, to the great injury and damage of orator; that where said lands were rated in parcels of less than forty acres the descriptions given to such tracts in said classification roll were so defective and uncertain that in some instances it was impossible to define the boundary of such tracts; that by fixing said ratings upon parcels of less than forty acres the unit of measure was wholly disregarded and the percentage rendered unequal and unjust; that to give a color of apparent fairness to said system of rating and classification of said lands said commissioners divided and classified one forty-acre tract of the lands of appellant Leonard in two tracts of twenty acres each, but in so doing they wrongfully and fraudulently rated one of said tracts at one hundred points and the other at fifty-five points when a fair and honest rating of said whole forty acres should not have been over fifty points if all of the tracts of land in said district had been fairly and honestly rated and classified as provided by the statute of this State; that the same illegal, wrongful and fraudulent system of rating and classification was adopted and practiced with three forty-acre tracts of appellant Madden, whereby the same were increased and rated over twenty points above what the same should have been if rated and

classified as provided by statute and if all of said lands had
been fairly and honestly made according to benefits; that
the ratings and classification of the lands of each of said
commissioners and of the said Margaret McGuire and Eu-
gene Ford were and are manifestly too low; that if their
said ratings and classification had been fairly and honestly
made the three forty-acre tracts of commissioner Garland
would have been assessed at one hundred points instead
of eighty-five, seventy-five and sixty-five, respectively, for
the reason that his said lands were the wettest and most in
need of drainage and the most benefited by said drainage
of any and all of the land in said district, with the exception
of a part of the lands of said Cantlin, Margaret McGuire
and William Hughes; that after said classification roll was
made by said commissioners and a date fixed for hearing
objections thereto they did not forthwith return and file
said roll with the town clerk but retained and filed the same
with the said clerk on the day fixed for hearing objections
thereto; that appellant Leonard personally appeared be-
fore the commissioners at the time and place fixed for
hearing objections and then and there objected that all of
said lands in said district were improperly rated and clas-
sified; that his land was rated too high and the lands of
each of the other land owners in said district were rated
too low; that appellant Madden also appeared in person
and objected that his lands were rated too high and that
the lands of said James J. Cantlin, William Hughes, Mar-
garet McGuire and Joseph Garland were improperly rated
too low; that said objections were made orally and the
clerk of said district failed to record the same in the drain-
age record as above stated, either in words or substance,
but said objections as recorded by said clerk, as appears
by said record, are, that appellant Leonard objected to the
whole of said classification of said lands as being too high,
and that appellant Madden merely objected to the rating
of his land as being too high; that the said commissioners

overruled all objections and confirmed and approved said roll and appellants Leonard and Madden perfected appeals to the county court; that upon hearing said appeals the county court refused to hear any evidence upon any objections except such as appeared of record in the clerk's record of said district, and also refused to hear any evidence, although appellants offered substantial proof that the lands of William Hughes, James J. Cantlin, Joseph Garland, Margaret McGuire and Eugene Ford were classified too low, but the court confined the hearing to the one objection that the appellants' lands were classified too high, and ruled that the only objections that could be heard were such as were shown by the clerk's record, and further, that the only proper objections that could be made by a land owner and litigated by an appeal to the county court were that the individual lands of said objectors were rated and classified too high; that if said county court had heard the objections actually made by appellants and the evidence offered by them said objections would have been sustained and the ratings of the lands of said commissioners and of said Margaret McGuire and Eugene Ford would have been materially raised, but said court held, as a matter of law, that it was not within its jurisdiction to order a re-classification of all of the lands in said district or said lands re-classified so as to require the ratings and classification thereof to be made in tracts of forty acres; that upon the hearing of said appeals appellant Leonard's lands were reduced to eighty-five points, and Madden's lands, rated at one hundred points, were reduced to ninety points; that appellants prayed an appeal in said county court from its order and judgment but the court denied the same; that the assessment upon Madden's land now is $2395.66, when, if the said classification had been fairly and honestly made, it would not exceed $1600; that Leonard's assessment now is $1867.20, when, if said classification had been honestly and fairly made, it would not exceed $1300; that complainant

Andrew Hughes did not make objections to the classification of his lands but paid his whole assessment, but that since paying the same, without any notice to him, an additional sum of $25 has been wrongfully levied and assessed against his said lands, all of which is caused by the illegal and fraudulent conduct of the said commissioners in rating and classifying their own lands and the lands of Margaret McGuire and Eugene Ford manifestly too low; that Leonard and Madden have paid no part of the assessment levied upon their lands, but have at all times been ready, and are now ready and willing, to pay whatever sum may be justly and equitably assessed and levied against their lands if the said classification upon the graduated scale should be made, as provided by law, according to benefits, so that each tract shall bear its equal and just portion of the cost of said improvement; that the assessments against the appellants' lands have been returned delinquent, and that the county collector, unless restrained, will obtain judgment and order of sale of appellants' lands to pay said illegal assessments.

It will be seen from the foregoing averments of the bill that appellants' sole grounds of complaint are, that the commissioners knowingly and fraudulently classified their own lands lower and those of appellants higher than they should have been, for the purpose of enabling the commissioners to escape their just share of the cost of the proposed improvement. The wrong and injury alleged is that certain lands are improperly classified. In a general way it is charged that the classification was fraudulently made. The charges of fraud merely go to the motive of the commissioners in making the classification. The result of the allegations is that the classification made is not a true and correct one, and ought to be set aside by a court of equity on the ground that it is inequitable and unjust. The conclusion to be drawn from the averments of the bill is not any different than it would be if it were charged that the commissioners, through a mistake of fact or want of judg-

ment, had made an improper classification. The effect is the same in the one case as in the other.

The 26th section of the statute under which this district was organized provides: "The commissioners by resolution shall order such amount of money to be raised by special assessment upon the lands of the district as may be necessary, and such amount shall be apportioned among the several tracts in the name of the owner when known, according to the acreage of each and its figure of classification on the graduated scale, so that each tract may bear its equal burden in proportion to benefits." Under this statute the duty of apportioning the assessment according to the benefits is placed on the commissioners. The extent of the benefits that each tract will receive from the proposed improvement is a matter involving the judgment and discretion of the commissioners. In the very nature of things, different persons would be liable to differ widely in respect to the benefits that any particular tract would receive from the proposed drainage. The mere fact that different persons would disagree upon a question of this character would be no proof that either of them was influenced by any improper considerations. There being no invariable standard for the measurement of benefits, an averment that a particular tract is classified too high or too low must be regarded merely as a statement of the conclusion of the pleader. It would be remarkable if the commissioners should make a classification in the drainage district to which all the land owners would agree.

In order to carry out the provisions of the Drainage law it is necessary that the power to apportion the benefits and burdens should be vested in someone. As we have already seen, the legislature has vested this power in the first instance in the drainage commissioners, with the right of any land owner who feels himself aggrieved and who has filed objections before the commissioners, to appeal to the

county court and have the classification of his lands reviewed. The statute also provides for a further appeal to the circuit court if the county court will allow it, otherwise the judgment of the county court is final. The statute has thus provided a complete and perfect remedy at law for the purpose of correcting any inequalities in the classification. Appellants have resorted to the statutory remedies. They appealed from the classification by the commissioners to the county court, and there their complaints were heard and decided. After the objections have been considered and determined by the county court, unless an appeal is granted the judgment is by the terms of the statute final and conclusive. (*Gauen* v. *Moredock and Ivy Landing Drainage District,* 131 Ill. 446.) If a bill in equity can be maintained in this case to impeach the classification after it has been reviewed in the county court, we see no reason why a court of equity would not take jurisdiction in all cases where it was charged that the classification was improperly made through the fraud or mistake of the commissioners.

The manifest purpose of allowing an appeal to the county court is to give the land owner an opportunity to have the classification passed on by the county court and thereby correct any mistakes that the commissioners may have made. If, upon the hearing before the county court, it could be made to appear that the classification was too high or too low, ample power is given to correct the same, notwithstanding that inequality in the classification was the result of fraud on the part of the commissioners. Even if it be conceded that the commissioners acted from an improper or selfish motive and that this fact imparts a fraudulent character to the classification, still this does not necessarily give a court of equity jurisdiction where there is a remedy at law. 1 Pomeroy's Eq. Jur. (2d ed.) sec. 178, and cases there cited.

In our opinion the statute affords a complete remedy at law, which is a sufficient reason for dismissing the bill. The decree of the circuit court is accordingly affirmed.

*Decree affirmed.*

DUNN, CARTWRIGHT and CARTER, JJ., dissenting:

The *gravamen* of the appellants' complaint is, that the commissioners, for the purpose of avoiding the payment of their own just and fair proportion of the cost of the improvement, knowingly, intentionally and fraudulently classified their own lands lower and the lands of the complainants higher than they should have been classified. Fraud is one of the broadest grounds of equity jurisdiction, and such jurisdiction extends to the setting aside of every transaction fraudulently done to the injury of the party complaining. That it is a gross and palpable fraud for commissioners of a drainage district, with the design of avoiding payment of their just shares of an assessment, to classify their lands below what they know to be the proper figure and to classify the lands of other owners above what they know to be the proper figure, no argument is needed to show.

It is said, however, that the appellants had a complete remedy at law, of which they have availed themselves. Although equity has general jurisdiction in all cases of fraud, it will not ordinarily exercise such jurisdiction where there exists a plain, adequate and complete remedy at law. Had the appellants such remedy? The law gave them an appeal to the county court. Appellants pursued that remedy with such degree of success as was possible, securing a reduction in the classification of their own lands. Such reduction, however, only partially repaired the injury done by the improper classification. The classification of the lands of the commissioners at too low a figure relieved them from a proportionate amount of the assessment, and this amount which they escaped had to be borne proportion-

ately by the other land owners. From the allegations of the bill it appears that the reduction of appellants' figure of classification added $25 to the assessment of Andrew Hughes, and, of course, a proportionate amount to the assessment of every other land owner. The raising of the figure of classification of the commissioners in accordance with the averments of the bill will reduce *pro rata* the assessment of each of the other land owners, and until that is done there will be no complete remedy for the wrong done by the improper classification.

The county court restricted the hearing, on the appeal, to proof that the lands of the appellants were classified too high, because the clerk of the district had failed to state on the record the objections of the appellants that the lands of the commissioners and other land owners were classified too low, and the court, on appeal, was confined to the objections which appeared by the record to have been made before the commissioners. It is said that if the appellants could not get adequate relief because of this condition of the record, they could by *mandamus* require the clerk to make a true record showing the objections which were actually made, and the case of *New Haven Clock Co.* v. *Kochersperger,* 175 Ill. 383, is referred to. In that case the complainant had an adequate remedy, by *mandamus,* to compel the county board to hear its appeal from the assessment. *Mandamus* does not here afford an adequate remedy. The county court was willing to act, and did act. To turn the appellants out of the court to which they had appealed, and compel them to go to another court and seek a *mandamus,* not to compel the court to hear their cause, but to compel an officer of another tribunal to make a record which they could afterward present to the county court, and by this circuitous route finally be enabled, through two suits at law, to obtain a hearing of their cause, is not giving them an adequate remedy. They have been diligent for their own protection by insisting upon their legal rights

and pursuing the remedy given by the statute. That remedy has proved insufficient through no fault of theirs, and equity ought to afford them relief without driving them indefinitely from court to court.

The appellees insist that the bill is insufficient because the specific acts constituting the fraud should be alleged and because the acts charged against the commissioners were such as were within their discretion and the judgment which they were authorized by the statute to exercise. The averments of the bill are not consistent with the exercise of discretion and judgment by the commissioners. Appellants aver a refusal to exercise discretion and judgment. They substantially charge that with an intent to avoid payment of their just share of the assessment, which is a fraudulent intent, the commissioners classified their own lands lower and appellants' lands higher than they knew they should, respectively, be classified, and this was a fraudulent act. An allegation that with such intent the commissioners knowingly classified their own lands at fifty-five when they should have been classified at one hundred, and appellants' lands at one hundred when they should have been classified at fifty, is an allegation of a specific, fraudulent act.

It is not a valid objection that if the bill is maintained in this case a court of equity may be called upon to take jurisdiction in all cases where it is charged that a fraudulent classification has been made. Courts of equity have always relieved against fraud, and the fact that the cases calling for relief are many has never been regarded as sufficient cause for declining jurisdiction. If such cases are numerous, the greater is the need that the courts should be open for their redress.

In our judgment the bill was sufficient to require an answer, and the demurrer to it should have been overruled.