(August 19, 1916.)

In the Matter of DRAINAGE DISTRICT NO. 1 OF CAN-
YON COUNTY; C. G. BURT et al., Commissioners of
Said District, Appellants, v. FARMERS' CO-OPERA-
TIVE CANAL COMPANY and THE NOBLE DITCH
COMPANY, Respondents.

[161 Pac. 315.]

DRAINAGE DISTRICT—STATUTORY CONSTRUCTION—CANAL COMPANY—LIA-
BILITY OF—ASSESSMENT OF BENEFITS.

1. A canal or ditch company corporation not organized for profit
and by statute exempt from general taxation is not relieved from
liability for assessments for the construction of a drainage system
required to protect the lands under it from becoming alkaline or
water-logged, for the drainage of land, where such canal or ditch
company contributes by seepage or otherwise to make such drainage
system necessary.

2. *Held*, that the assessment made by the commissioners, so far
as the waste ditch is concerned, is not directly against such ditch,
but against the corporation by reason of its being relieved of the
necessity or burden of maintaining such waste ditch, or keeping it
in repair.

3. Special benefits for which a canal or ditch company may be
assessed, as distinguished from general benefits, are whatever in-
crease the value of the land or easement or relieve it from a burden.

4. *Held*, that the rights of way of the respondents are easements,
and it was proper for the commissioners to consider each right of
way as one entire easement, and the provisions of sec. 9 (Sess. L.
1913, p. 63) do not require that each right of way or easement
shall be divided up into small parcels and the assessment fixed
against each parcel.

5. *Held*, that the question as to whether such assessments are
arbitrary, unjust and void because of the amounts assessed is not
before this court. The question presented is as to whether any
assessment whatever against such corporation can be legally made
under the facts of this case.

6. The question of the reasonableness or unreasonableness of the
assessment levied against the respondents is a matter that the law
has provided may be determined on the trial of the issues of fact
before a jury under proper instructions, and the determination of

the commissioners must be construed as *prima facie* correct as to the amount of such assessments until the proper court has held otherwise.

7. *Held,* that the word "responsible," as used in sec. 9a (Sess. L. 1915, p. 124), to wit, that "such lands are responsible for damages to lower lands from seepage and saturation by irrigation water," may be construed to mean physical responsibility, whether legally liable for damages under the law or not.

8. *Held,* that the legislature has authority under the provisions of the constitution to provide for assessments for the construction of a drainage system in a drainage district, and make all lands or easements within such districts subject to such assessments that are physically responsible for damages that result from seepage or percolation of water from lands or canals or easements therein.

9. Where water escapes either by seepage or percolation from a ditch or canal to the injury of another, and a drainage system is necessary to protect the lower land from becoming alkaline or water-logged, proper assessments may be made against such canal or ditch to assist in the construction of a drainage system that will protect lower lands from damage because of such seepage or percolation.

[As to drainage districts, see note in Ann. Cas. 1915C, 9.]

APPEAL from the District Court of the Seventh Judicial District, in and for Canyon County. Hon. Ed. L. Bryan, Judge.

Proceeding to annul or set aside assessments made by a drainage board against a canal and ditch company. Order granted to set aside such assessments. *Reversed.*

Harry Kessler, for Appellants.

The assessment is not made against the waste ditch as such, but against the corporation by reason of being relieved of the necessity of maintaining the waste ditch. This is clearly a special benefit. (9 R. C. L. 564; *Lipes v. Hand,* 104 Ind. 503, 1 N. E. 871, 4 N. E. 160.)

The law certainly does not contemplate that each right of way or easement should be divided up into little parcels and an assessment fixed against each parcel. (*Johnson Drainage Dist. No. 9 v. Hamilton,* 141 Iowa, 380, 118 N. W. 380.)

The determination or conclusions of drainage commissioners are considered *prima facie* as being reasonable and equitable, and that such conclusions shall not be set aside or be disturbed by the court in the absence of evidence disproving the correctness of such determination. (*Reclamation Dist. No. 70 v. Sherman,* 11 Cal. App. 399, 105 Pac. 277; *Riverdale Reclamation Dist. No. 805 v. Shimmin,* 24 Cal. App. 595, 141 Pac. 1070; *Leonard v. Arnold,* 244 Ill. 429, 91 N. E. 534.)

In assessing benefits from the establishment of a drainage district, a reasonably fair apportionment of the expense is all that can be expected, and the court will not, as a rule, interfere with the action of the board in making assessments unless it fairly appears that the assessment was on an erroneous basis or unjust, inequitable and out of proportion to the other assessments in the district. (*Cache Drainage Dist. v. Chicago S. E. R. R. Co.,* 155 Ill. 398, 99 N. E. 635.)

"All lands within the reclamation district are conclusively presumed to be benefited by the improvement." (*Reclamation Dist. No. 70 v. Birke,* 159 Cal. 233, 113 Pac. 170; *Nemaha Valley Drainage Dist. No. 210 v. Marconnit,* 90 Neb. 514, 134 N. W. 177.)

Courts have never refused to award damages occasioned by seepage or saturation because such damages were indefinite or conjectural. (*McCarty v. Boise City Canal Co.,* 2 Ida. 245, 10 Pac. 623; *Arave v. Idaho Canal Co.,* 5 Ida. 68, 46 Pac. 1024; *Stuart v. Noble Ditch Co.,* 9 Ida. 765, 76 Pac. 255; *Verheyen v. Dewey,* 27 Ida. 1, 146 Pac. 1116.)

With the overshadowing and perplexing problem of drainage which is now confronting every irrigated section, there is every reason for a return to the former rule of holding ditch companies to a strict degree of accountability for damages resulting from their canals. (*Mallett v. Taylor,* 78 Or. 208, 152 Pac. 873.)

Richards & Haga, for Respondents.

The assessments levied against respondents are unconstitutional and void, because they are wholly arbitrary and

unjust, out of all proportion to assessments on other lands and easements in the district, and apparently levied for the purpose of making these respondents or their shareholders pay a large proportion of the expense of draining the lands of other persons. (*Reclamation Dist. No. 70 v. Sherman,* 11 Cal. App. 399, 105 Pac. 277; *Jackson v. Board, etc.,* 159 Iowa, 673, 140 N. W. 849; *Reclamation Dist. No. 108 v. Hagar,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569; *Mound City etc. Co. v. Miller,* 170 Mo. 240, 94 Am. St. 727, 70 S. W. 721, 60 L. R. A. 190–203; *Wagner v. Leser,* 239 U. S. 207, 26 Sup. Ct. 66, 60 L. ed. 230; *Myles Salt Co. v. Board of Commissioners,* 239 U. S. 478, 36 Sup. Ct. 204, 60 L. ed. 392.)

Respondents are mutual co-operative irrigation companies, having no beneficial interest in these canals or rights of way, but holding the naked legal title as bare trustees for their shareholders. (*Spokane Valley Land & Water Co. v. Kootenai County,* 199 Fed. 481, 485; *Hall v. Eagle Rock etc. Co.,* 5 Ida. 551, 51 Pac. 110.)

These rights of way and canals are appurtenant to the lands of the individual shareholders in respondent companies. (*Humphries v. McKissick,* 140 U. S. 304, 11 Sup. Ct. 779, 35 L. ed. 473, 476; *In re Thomas' Estate,* 147 Cal. 326, 81 Pac. 539, 541; *Combs v. Agricultural Ditch Co.,* 17 Colo. 146, 31 Am. St. 275, 28 Pac. 966; Rev. Codes, secs. 3240, 3262; *Taylor v. Hulett,* 15 Ida. 265, 97 Pac. 37, 19 L. R. A., N. S., 535, *Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053; *Russell v. Irish,* 20 Ida. 194, 198, 118 Pac. 501; *Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 475, 1025.)

Being merely appurtenant to the lands of the shareholders, these rights of way and canals cannot be taxed or assessed separately therefrom, and the lands to which they are appurtenant can be assessed no further by the drainage district, because such lands are either fully assessed or not assessable. (*Hale v. Jefferson County,* 39 Mont. 137, 101 Pac. 973; *Kendrick v. Twin Lakes Reservoir Co.,* 28 Colo. 281, 144 Pac. 884; 2 Page & Jones, Taxation by Assessment, secs. 665, 719; *Kenny v. Kelly,* 113 Cal. 364, 45 Pac. 699; Laws 1913, p. 63, sec. 9.)

Land or other property that will not be drained or bene-
fited by the proposed system cannot be assessed for a share
of the cost of such system.    (Page & Jones, Taxation by As-
sessment, sec. 564; *Klinger v. People ex rel. Conkle,* 130 Ill.
509, 22 N. E. 600; *Note to Billings Sugar Co. v. Fish,* 40
Mont. 256, 20 Ann. Cas. 264, 106 Pac. 565, 26 L. R. A., N. S.,
975; *Myles Salt Co. v. Board of Commissioners, supra; Blue
v. Wentz,* 54 Ohio St. 247, 43 N. E. 493; *Zinser v. Buena
Vista Co.,* 137 Iowa, 660, 114 N. W. 51; *Mason v. Fulton
County Commrs.,* 80 Ohio St. 151, 131 Am. St. 689, 88 N. E.
401, 24 L. R. A., N. S., 903.)

The supposed benefits on which the commissioners based
their assessments are wholly speculative, conjectural and
visionary, because respondents are not liable for seepage in
the absence of negligence; such actions are long since barred
by the statute of limitations, and both the fact and the amount
of future recovery against respondents are wholly problem-
atical.    (*McCarty v. Boise City Canal Co.,* 2 Ida. 245, 10
Pac. 623; *Stuart v. Noble Ditch Co.,* 9 Ida. 765, 76 Pac. 255;
*Woodland v. Portneuf etc. Co.,* 26 Ida. 789, 146 Pac. 1106;
*Middlekamp v. Bessemer Irr. Ditch Co.,* 46 Colo. 103, 103
Pac. 280, 23 L. R. A., N. S., 795.)

Subn. Fifth of secs. 9 and 9a of the drainage law are uncon-
stitutional and void, because they deny respondents due
process of law and the equal protection of the laws and au-
thorize the taking of private property of respondents' share-
holders without compensation.    (Idaho Const., art. 1, secs.
14, 15; U. S. Const., Amendment 14; *Asberry v. Roanoke,*
91 Va. 562, 22 S. E. 360, 42 L. R. A. 636; *Raleigh v. Peace,*
110 N. C. 32, 14 S. E. 521, 17 L. R. A. 330; *Elliott v. McCrea,*
23 Ida. 524, 130 Pac. 785; *Myles Salt Co. v. Board of
Commrs.,* 239 U. S. 478, 36 Sup. Ct. 204, 60 L. ed. 392.)

B. F. Neal, *Amicus Curiae.*

When the definition of "land" as contained in the author-
ities is added to the statutory definition of "real estate," we
see that the word "canals," being merely a part of lands,
is properly included.    (Kent's Comm. 401, 402; 1 Washburn,

Real Property, 3, 4; Tiedeman, Real Property, sec. 2; 24 Cyc. 842; 18 Am. & Eng. Ency. Law, 140; Tiffany, Law Real Property, pp. 26, 515, 517; sec. 3056, Rev. Codes.) ¯

The rule which the legislature has adopted in sec. 9a of the act of 1915 as a basis and test for determining whether or not lands should contribute toward the cost and expense of the drainage of low, seeped and water-logged lands is a proper one and valid. The rule of classification made by the legislature in determining what lands shall be subject to taxation for such purpose is well within the rule laid down by the cases. (*Mathison v. Minnesota Str. Ry. Co.*, 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412, 418; *Cameron v. Chicago etc. R. R. Co.*, 63 Minn. 384, 65 N. W. 652, 31 L. R. A. 553; *Lommen v. Minnnesota Gas Light Co.*, 65 Minn. 196, 60 Am. St. 450, 68 N. W. 53, 33 L. R. A. 437; *Quong Wing v. Kirkendall*, 39 Mont. 64, 101 Pac. 250; *State ex rel. Oregon R. & Nav. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A., N. S., 466.)

The correct rule is that if a man chooses to perform acts or to have acts performed for his benefit, which even without fault upon his part injure another, the law may decree that the doer of the act shall assume the risk of the resulting damages, and it may fix the legal consequences of his act. (*Western Indemnity Co. v. Pillsbury*, 170 Cal. 686, 151 Pac. 398, 10 N. C. C. A. 1.)

SULLIVAN, C. J.—This is an appeal from an order of the district court sustaining the remonstrance of the Farmers' Co-operative Canal Company, a corporation (which will hereafter be referred to as the canal company), and the remonstrance of the Noble Ditch Company, a corporation (which will hereafter be referred to as the ditch company), against the assessments of benefits against the rights of way of each of said companies, by which order the court adjudged and held null and void such assessments, and ordered such assessments stricken and excluded from the report of the commissioners of Drainage District No. 1, Canyon county, which board of commissioners was appointed by said court for the

purpose of assessing the benefits to the several corporations and persons owning land and property in said drainage district.

The following facts appear from the record: After the organization of said district and the appointment of said board of commissioners, they entered upon the discharge of their duties. They employed an engineer and surveyor for the purpose of securing and compiling the necessary data, examined the lands included within the boundaries of the district, determined and assessed benefits against each tract of land, made their report to the court and asked for the confirmation thereof. In this report the commissioners assessed benefits against the respondent corporations, and thereupon said corporations filed remonstrances against the confirmation of said report and the lower court sustained such remonstrances and dismissed the proceedings as to said two respondents.

The report of said commissioners was made in conformity with sec. 9 of the drainage act of 1913. The report contains (1) the route and location of the proposed drainage system; (2) the estimated cost of the proposed works as $117,844; (3) the probable yearly cost of keeping the drainage district in repair as $1,000; (4) a list of the lands that will be injured for right of way, etc., and the amount of such injury as $3,219.01; (5) the estimated aggregate benefits to the land within the district from the construction of said works as $589,220, and the list of the lands that will be benefited and the amount of such benefit set opposite the description of each tract; (6) a list of municipalities and corporations which the commissioners had determined would be especially benefited by the proposed drainage system, together with a description of the lands belonging to such corporations and the amount of benefits assessed against each; (7) a determination of the proposed permanent boundaries of the district.

The benefits assessed against the farm lands in the district range between thirty-five and forty dollars a year per acre, and the assessments thereon, between seven and eight dollars per acre.

It appears that the respondent corporations are irrigation corporations, owning canals which take water out of the Payette river and carry it in the main canals through the drainage district and deliver it to farmers farther down the valley. The canal company has a right of way within the district 7.61 miles in length and 100 feet in width and also a waste ditch 2¾ miles in length and two rods in width. The ditch company has within the district a right of way for its ditch 7.41 miles in length. A portion of it is 100 feet in width and the remainder 75 feet in width. The amount of benefits determined by the commissioners against the canal company was $100,000 and the assessment is one-fifth of that amount or $20,000, and the benefits to the ditch company, $50,000, and the amount of assessments $10,000, and the net benefits assessed against both companies result, quoting from the commissioners' report, in their "being relieved from responsibility for damages done to low lands from seepage, saturation by irrigation by water from canal on high land, and the necessity for carrying off waste water from canal."

The amount of the assessments against the respondent corporations is not an issue on this appeal. The sole question here for determination is whether or not assessments of the nature specified and made by the commissioners can be levied against such corporations, and the determination of that question requires a construction of the drainage act and its amendments.

The constitutionality of the act known as the drainage district law (see Sess. Laws 1913, p. 58), under which said drainage district was organized, was before this court in 1914. See *In re Drainage Dist. No. 1 of Canyon County,* 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210, where it was held that said act is constitutional. In 1915 the legislature amended sections 7 and 24 of said drainage law and added thereto sec. 9a. (Sess. Laws 1915, p. 124.)

The commissioners determined from the information they had that the two respondent companies were largely responsible for the damage and injury to the lands within said drainage district, and based their assessments against them on the

theory and under the authority of sec. 9 of the original drainage law of 1913 (see Sess. Laws 1913, p. 63), and added section 9a, which was an amendement to the original act.    (See Sess. Laws 1915, p. 124.)

Subn. 5 of sec. 9 of said act directs the commissioners to "apportion and assess the estimated cost of the same [drainage] on the lands so benefited by setting opposite the correct description of each tract, lot or easement, the portion of such cost assessed as benefits thereon . . . . and if any municipality or corporation should in their judgment bear a part of the expense or as such will derive a public or special benefit from the whole or any part of such proposed work, they shall so report and assess the amount of such benefits."

Under the provisions of that section the commissioners are given two grounds on which they may base assessments. First, against the land or any easement therein as such; second, against municipalities or corporations, on the theory that they may be especially benefited independent of any land owned or possessed.

In said report of the commissioners the respondent companies are listed as corporations receiving special benefits; but, on the other hand, the particular land they own within the district is described and the amount of assessment set opposite such description, so that the assessments can be considered either as being against corporations that are especially benefited or against the land owned by them that is benefited.    The report of the commissioners is so framed as to make either provision of the law applicable to the respondents.    In said report the nature of the benefits is specified substantially in the language of said added section 9a, which is as follows:

"In determining the amount which each tract of land will be benefited by such proposed drainage system the commissioners shall consider the damage done to low land from seepage and saturation by irrigation water from high land, and the necessity for the carrying off of waste water, and such high lands shall be considered as being benefited to the extent

and in the amount that such lands are responsible for damage to low lands from seepage and saturation by irrigation water."

It appears that the commissioners acted on the theory that subn. 5 of sec. 9, above quoted, and sec. 9a directed or commanded them to do as they have done in making said assessments, and that said provisions of sec. 9 required them to assess for the purpose of bearing a share of the cost of the construction of the proposed drainage works, lands that would be benefited, also all municipalities or corporations that would derive a public or special benefit from such works, and that sec. 9a declared the law or rule for equitable determination and assessing special benefits in cases where seepage or saturation by irrigation water contributed to the necessity for a drainage system.

The respondent corporations have filed separate remonstrances. That of the canal company is considerably longer than that of the ditch company, and contains some seventeen paragraphs, which include all of the objections urged by the ditch company and several additional ones. The principal objections presented by said remonstrances are substantially as follows:

1. That the canal company is a corporation, not organized for profit, and that it is simply a trustee for the farmers who use the water carried through the ditch, and that such water and the easement in the canal are appurtenant to the land irrigated, and therefore the canal company or corporation is not assessable separate and apart from the land using the water.

2. That inasmuch as the canal company has a waste ditch which not only cannot be benefited but will actually be destroyed by the drainage system, therefore the assessment against it is improper and void.

3. That the canal company's lands have not been assessed by setting opposite each tract of land the benefits assessed thereon.

4. That inasmuch as the estimated benefits to the canal company amount to about $1000 per acre, such assessment is arbitrary, unjust and therefore void.

5. That the alleged benefits are prospective, conjectural and therefore void.

(1) As to the first objection: Counsel for appellants concede that the purpose of said canal corporation is merely to hold the legal title to the canal and appurtenant water rights in trust for the farmers and users of water, but, on the other hand, it is contended that these farmers have taken it upon themselves to organize the canal company for convenience and economy in operating their system of irrigation; that the corporation itself is a legal entity recognized by law, which the farmers by their act of incorporation voluntarily created for convenience and economy. And it is also contended that no action will lie against the various stockholders of said corporation; that the corporation holds the legal title itself, and is responsible for the repair and up-keep of the canal, and that if such canal by breakage or seepage damages any owner's land, it is the canal company that is sued and is in law the only proper party to sue, and that all taxes and assessments, if any, against the canal system, as distinguished from the land under the canal, are properly assessed and levied against said corporation; and it is contended that it therefore follows that if the system of drainage affords relief from liability for damages or lessens the expense of maintenance, it is the corporation that is benefited.

Counsel for respondents contend that said canal and ditch companies are not organized for profit, and are exempt under the law from taxation, and it may be inferred from the argument in their printed brief that they claim that exemption from taxation carries with it exemption from special assessments.

It is a well-recognized rule that a constitutional or statutory exemption from taxation is generally held to apply only to taxation for the general purposes of government, city, county or municipality, and not to relieve from liability for local assessments for municipal and other like improvements. (12 Am. & Eng. Ency. of Law, 314, and cases cited; also *People v. Pitt,* 169 N. Y. 521, 62 N. E. 662, 58 L. R. A. 372, and authorities cited.)

There is, therefore, nothing in the contention of counsel that because canal and ditch companies are exempt from taxation, that that exempts them from special assessments for improvements.

(2) We will next consider the contention that the waste ditch of the canal company will not be benefited, but will actually be destroyed by the drainage system, which contention applies only to the canal company.

It appears that the canal company has and is required to keep up for the purpose of carrying off its surplus water a waste ditch about two and three-fourths miles long and two rods wide, which costs the canal company considerable money each year to clean and maintain, and it seems that it was the theory of the commissioners that with the construction of the proposed drainage system, such system would largely take care of the surplus water and relieve the canal company from maintaining at least the principal portion of said waste ditch and thus would be a saving and benefit to the canal company. . Counsel for the canal company contend that by the construction of the proposed drainage system said drainage ditch would become unnecessary and useless, and therefore of no value, and that the construction of the drainage system would deprive them of property without due process of law.

There is nothing in this contention, if it be true that the drainage system would relieve the canal company of the burden of keeping up and maintaining said waste ditch. The assessment made by the commissioners is not against the waste ditch, as such, but against the corporation by reason of being relieved of the necessity or burden of maintaining the waste ditch. It appears to us that this would be clearly a special benefit.

In the text, 9 R. C. L., p. 654, it is stated as follows:

"Special benefits for which a land owner may be assessed, as distinguished from general benefits for which he may not be assessed, are whatever increase the value of the land, *relieve it from a burden,* or make it especially adapted to a purpose which enhances its value."

To the same effect is *Lipes v. Hand,* 104 Ind. 508, 1 N. E. 871, 4 N. E. 160; *Heffner v. Cass and Morgan Counties,* 193 Ill. 439, 62 N. E. 201, 58 L. R. A. 353, and notes to the latter case.

(3) The third objection is to the effect that the canal company's lands have not been assessed by setting opposite each tract of land the benefits assessed thereon. By referring to sec. 9 (Sess. Laws 1913, p. 63), it will be observed that the amount of assessment is to be set "opposite the correct description of each lot, tract or easement." The rights of way of the respondents are easements, and it is proper to consider each right of way as one entire easement. The statute does not require that each right of way or easement shall be divided up into small parcels and an assessment fixed against each parcel (See *In re Johnson Drainage Dist. No. 9,* 141 Iowa, 380, 118 N. W. 380.)

(4) The fourth contention is that since the assessment against the canal company is $20,000 and that against the ditch company is $10,000, and that the canal company's right of way, figured on the acreage basis, would be assessed at $200 per acre and the ditch company's at $100 per acre, such assessments would be arbitrary, unjust and void.

As before stated, the question as to whether such assessments are arbitrary, unjust and void because of the amount is not before this court in this proceeding. The findings of the commission no doubt were based on some evidence, and this court cannot in this proceeding determine whether they are arbitrary and unjust without the evidence that the commissioners had before them.

It was held in *Reclamation Dist. No. 70 v. Sherman,* 11 Cal. App. 399, 105 Pac. 277, that "the duty of the commissioners is to make an estimate of the whole expense of the proposed reclamation works, and then assess the land embraced in the district proportionate to the whole expense thereof and according to the benefits which will result to each parcel of land from such reclamation. It is clear that the statute contemplates that considerable discretion shall be exercised by the commissioners in the determination of the question as to

benefits which will accrue to the several tracts of land included in the district. By this we mean to say that, while an arbitrary assessment cannot be levied, the judgment of the commissioners upon the assessment, after a view of the land as contemplated by the statute, must be presumed to have been the result of a consideration of all the elements necessary to a just apportionment of the assessment." (See, also, *Riverdale Reclamation Dist. No. 805 v. Shimmin*, 24 Cal. App. 595, 141 Pac. 1070.)

In *In re Johnson Drainage Dist. No. 9*, 141 Iowa, 380, 118 N. W. 380, it was held that the benefits to a railroad right of way were entirely different from farm land, and should not be assessed on the same basis as forty-acre tracts. In that case the court said: "Neither railroad property nor highways are used as lands are ordinarily used, and hence the benefits to be derived by such property from the improvement are of an entirely different character from those conferred upon agricultural lands." (*Leonard v. Arnold*, 244 Ill. 429, 91 N. E. 534; *Jackson v. Board of Supervisors*, 159 Iowa, 673, 140 N. W. 849.)

The reasonableness or unreasonableness of an assessment levied against the respondents is a matter that the law provides is to be determined on the trial of the issues of fact. That question may be submitted to a jury under proper instructions from the court, but until there is proof to the contrary, the determination of the commissioners must be construed as *prima facie* correct as to the amount of such assessments.

(5) The fifth contention, that the alleged benefits assessed against the respondents are prospective and conjectural and therefore void is without merit. It is true that it is difficult to assess benefits that will accrue in the future with any particular degree of certainty even against farm lands, and the courts uniformly hold that an approximate estimate is all that is necessary. The fact that an exact measurement of the benefits which may accrue to land in a drainage district cannot be ascertained with accuracy until after the completion of the system, and perhaps not then, does not

render the damages so speculative and conjectural in their nature as to be impossible of reasonable ascertainment before the improvement is made. In the case of *Nemaha Valley Drainage Dist. No. 2 v. Marconnit*, 90 Neb. 514, 134 N. W. 177, the court had under consideration an objection to the effect that benefits which may accrue are so speculative and conjectural in their nature as to be impossible of ascertainment until after the construction of the improvements, and said: "This objection, however, would be equally applicable to proceedings in the ascertainment of damages occasioned by the laying out of highways or the building of railroads. Furthermore, if no assessment and levy could be made until after an improvement of this nature was completed, common prudence on the part of engineers and contractors would no doubt operate so that it would be a long time before the land would be relieved from overflow."

This court held in *Woodland v. Portneuf-Marsh Valley Irr. Co.*, 26 Ida. 789, 146 Pac. 1106, that exact and definite measurements of the respective quantities of water from different sources are not essential to sustain the verdict of a jury in determining what amount of damages a defendant corporation as an independent tort-feasor should pay as compensation for the injury caused by its part of such water, although some evidence in that respect is essential.

Courts have not refused to award damages occasioned by seepage or saturation because such damages were indefinite or conjectural. (*McCarty v. Boise City Canal Co.*, 2 Ida. 245, 10 Pac. 623; *Arave v. Idaho Canal Co.*, 5 Ida. 68, 46 Pac. 1024; *Stuart v. Noble Ditch Co.*, 9 Ida. 765, 76 Pac. 255; *Verheyen v. Dewey*, 27 Ida. 1, 146 Pac. 1116.)

Counsel for respondents contend that the assessments made against the defendant corporations are levied upon an erroneous basis and in total disregard of any benefits that they may or can receive from the construction of said drainage system, and that in so far as said sec. 9 of the drainage law of 1913 and said sec. 9a of the 1915 laws can be construed to justify such assessments, they are unconstitutional and void. It is conceded by counsel for respondents that in this

case the amount of actual assessments levied is immaterial from their viewpoint; that their attack is on the basis of the assessment rather than merely on the amount, and the real question is whether the statutory provisions just referred to and the assessments based upon them are constitutional and valid, or whether they amount to a denial of due process of the law and equal protection of the law and would result in the taking of property without compensation, and also in violation of the constitutional guaranty of uniformity in taxation.

The position taken by counsel for respondents seems to be that unless the seepage from their canals occurs through the canal company's negligence and that by reason of such negligence damages may be recovered in an action, the canal company is not benefited by the drainage of such lands, and in construing the word "responsible," as used in the last clause of said sec. 9a, above quoted, to wit, "that such lands are responsible for damages to low lands from seepage and saturation by irrigation water," they concede that it may mean either their legal responsibility or physical responsibility; that we would then have a legislative declaration that "high lands" and "canals" are benefited to the extent that the use of water thereon in a lawful and necessary manner has resulted in the percolation of a portion of such water to lower lands, and counsel contend that the "use of water in a lawful and necessary manner," under the contention of appellants, seems to go to the very basis of the law of irrigation in the arid states, and is absolutely contrary to the holdings of this court in the cases of *Stuart v. Noble Ditch Co.*, 9 Ida. 765, 76 Pac. 255, *Woodland v. Portneuf etc. Co.*, 26 Ida. 789, 146 Pac. 1106, *Verheyen v. Dewey*, 27 Ida. 1, 146 Pac. 1116. Those cases involve actions to recover damages because of seepage from canals and irrigated lands resulting from negligence. If the terms "responsible," as used in said section, may be construed to mean physically responsible, whether legally responsible under the law or not, then under said act ditch companies and corporations may be

assessed whether the damage results from negligent construction or not.

The English common law as well as the early American rule was to the effect that any person who conveyed or accumulated water upon his land by artificial means did so at his peril, and if any water should escape by means of seepage, and damage result, liability therefor was conclusively presumed. During the years of the development of irrigation in the western country, the courts, with the desire, evidently, of lending every encouragement to the reclamation of arid lands, required proof of negligence in the construction of canals before permitting the recovery of damages from seepage. (*Fleming v. Lockwood,* 36 Mont. 384, 122 Am. St. 375, 13 Ann. Cas. 263, 92 Pac. 962, 14 L. R. A., N. S., 628.) The authorities on this question are generally collected in the annotations to the above case found in the L. R. A. and Annotated Cases.

It seems in this irrigated country the question of drainage is now confronting almost every irrigated section, and there seem very cogent reasons for a return to the former rule above stated, at least to the extent of assessing lands for the construction of a drainage system from which seepage or percolation damages or injures other lands. The early settlers of the arid regions were not confronted with the question of drainage, but time and experience have proven that a drainage system is absolutely necessary where large areas of desert land are reclaimed by irrigation. It has been argued that the drainage law, as enacted, applied only to lands that had become swampy, alkaline or water-logged because of natural conditions. However that may be, this court held in *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785, which case involves the drainage district law, that said act might well be termed the complement of the irrigation act. New conditions have arisen in this state, and the legislature has the right to enact any legislation not in conflict with the provisions of the constitution which is necessary to meet new conditions whereby substantial justice may be done.

In the very recent case of *Mallett v. Taylor*, 78 Or. 208, 152 Pac. 873, the court said:

"Beyond the fact that some of the courts held that the owner of a ditch or dam causing damage by seepage or overflow is liable irrespective of negligence, while others hold that he is liable only for negligently permitting water to escape from such causes, the courts generally make no distinction between cases of damage arising from water escaping by overflow and those arising from seepage, and logically there can be no reason for any distinction . . . . but to hold that a man may lawfully construct a ditch which from the manner of its construction must necessarily occasion substantial injury to the land of his neighbor either by overflow or by percolation, or that he can lawfully so irrigate his land as to do such substantial injury, would be to grant him an easement in such adjacent land without compensation, and this the law will not permit."

In the case at bar the court need not go to the extent that the Oregon court has gone in the above case, but we think it was the intention of the legislature to provide for the assessment of all lands and canals within a drainage district and make them responsible for assessments according to the damage that has been caused by overflow, from such lands and canals, seepage or percolation. It is a well-recognized rule of law that an owner of property ought not to be permitted to use it to the injury of the property of another, but recognizing that there are some injuries which result in damage for which compensation cannot be recovered in an action in court, we are satisfied that the legislature has full authority under the constitution to provide for assessments and make all property subject to such assessments that is physically responsible for damages that result from acts for which no legal responsibility under an action to recover damages attaches, and that the legislature has done so under and by virtue of the drainage laws enacted by it.

Suppose that one-half of the land in this drainage district was made worthless by reason of percolation and seepage from said canals, and suppose, also, that said canals were

properly constructed and operated; that there was no negligence in either construction or operation; and that by reason thereof the land owners could not recover damages from those companies.   Would it not appear to be contrary to the public policy of the state to hold that those companies could not be required to pay their proportionate part of the cost of a drainage system to protect the land owners from the seepage and overflow waters of such canals?   The canals being physically responsible for much of the injury done to such lands, ought these companies not, in justice and equity, be required to pay their proportionate part of the cost for constructing a drainage system to carry off the seepage and overflow waters from their systems?

It is a well-recognized fact that under many of the irrigation systems of our state thousands of acres of land which were reclaimed from an arid condition and which for a time produced valuable crops have now become alkalined or waterlogged, and thus ruined, and grow nothing but willows and tules because of the seepage of waters from canals and the irrigation of higher lands.   And it certainly is not the public policy of the state to permit thousands, if not hundreds of thousands of acres of lands that were once productive, to be ruined and made worthless, and leave the owners thereof remediless.   It is only equitable and just that all who cause or assist in causing damage to, or the ruination of, such lands, pay their proportionate part of the cost of a drainage system to protect the lower lands from being made worthless.

It is well known that the cost of drainage systems will in all probability be less than to require the canal companies to cement their canals or to otherwise make them impervious.

It is clearly the policy of the state to have the great irrigation schemes of the state so conducted as not to ruin thousands of acres of fine agricultural land and bankrupt the owners and leave them remediless.   One who permits water to escape from his canal, either by seepage or percolation, to the injury of another, ought at least to be required to assist in the construction of a drainage system that will protect the

lower lands from damage because of such seepage or percolation.

We therefore conclude that assessments of the nature specified and made by the commissioners against said corporations can be legally levied against such corporations, and since the trial court held that such assessments could not be legally made and were illegal and void, the order of the district court must be reversed and the cause remanded for further proceedings. Costs are awarded to appellants.

Morgan, J., concurs.

Budge, J., sat at the hearing, but took no part in this decision.

(December 13, 1916.)

### ON REHEARING.

10. *Held*, upon rehearing, that the order of the lower court appealed from in this case be reversed, and that the cause be remanded for trial, with direction to the lower court to frame the necessary issues by allowing proper amendments to all pleadings, and that evidence be received touching the liability of respondents, as well as that of all other property owners claimed to be liable to assessment for the purpose of making the proposed improvement, whether now in the district or properly sought to be included therein; and that the conclusions of the court as announced in its opinion following the original hearing be not deemed to be the law of the case or as binding upon the trial court upon the trial of this case; this court reserving the right to place a final construction upon the legislative acts involved in this proceeding when the whole matter relating thereto has been properly submitted to it.

BUDGE, J.—A rehearing was granted in this case on October 14, 1916, and the case was reargued at this present term of court. Upon an examination of the petition for a rehearing and the briefs of respective counsel, and after listening to the arguments of counsel for the respective parties interested in this appeal, it is quite evident that there is an unusual situation confronting this court, growing out not

only of the question involved, but also of the form of the pleadings required by the statutes in cases of this character.

The only pleading on the part of the appellant required by the statutes is the report of the commissioners of the appellant drainage district; and a remonstrance thereto is the only pleading permissible on the part of the respondents, which is more in the nature of an answer than a demurrer, and by which mixed questions of both law and fact may be presented, and were presented, in this case in the remonstrances filed by the respondents.

Under the terms of the statutes providing for the creation of drainage districts, the trial court is required to determine all questions of law and fact, save the two questions of benefits assessed and damages awarded, and as to these questions the court on demand of the person assessed, or to whom damages may be awarded, is required to frame the issues and submit them to a jury.

An examination of the record before us discloses the fact that the questions of law and fact, arising by reason of the report of the drainage commissioners and the remonstrances of the respondents made thereto, are more or less confusing, and questions have been suggested by counsel on the arguments and in their briefs that may become very material in the proper determination of the questions involved in this case, and especially as to the proper construction of the drainage act, upon which this case is based and the future policy of the law with reference to the creation of drainage districts within the State, and the assessment of benefits. In this case the trial court construed and acted upon the remonstrances as demurrers to the report of the drainage commissioners, thereby ignoring the numerous issues of fact presented by such remonstrances, the determination of which may have an important bearing upon the final determination of the legal questions presented by such remonstrances. It further appears to this court that whatever questions this court may determine on the record before it, still the case must go back for trial. It seems hardly proper to call upon this court to definitely determine many of the legal questions that may be

presented on the present record, and especially to construe the drainage act and amendments thereto as applicable to this case, when it is apparent from the record and suggestions of counsel that other facts should be pleaded and the questions of law and fact should be segregated, and such questions of fact supported by testimony.

In view of the foregoing, the trial court will proceed to frame the necessary issues by allowing proper amendments to all pleadings, and ·will receive evidence touching the liability of respondents, as well as that of all other property owners claimed to be liable to assessment for the purpose of making the proposed improvement, whether now in the district or hereafter included or properly sought to be included therein, and the legal questions considered by the court on the former hearing will not be deemed the law of this case, or as binding on the trial court upon the trial of this case, and this court hereby expressly reserves the right to place a final construction upon the drainage act and the amendments thereto as contained in the Session Laws of 1913, at page 58, and the Session Laws of 1915, at page 124, until such time as these acts are before this court in proper form as herein indicated.

The order of the district court is therefore reversed, and the cause remanded for further proceedings, with the privilege allowed to the parties to this proceeding to amend the pleadings in the trial court in such manner as may be proper. Costs are awarded in favor of appellant.

Sullivan, C. J., and Morgan, J., concur.