Garrett v. City of St. Louis.

GARRETT, Plaintiff in Error, v. CITY OF ST. LOUIS, Defendant in Error.

| 25 | 505 |
| 96 | 506 |
| 32a | 505 |
| 25 | 505 |
| 100 | 306 |
| 25 | 505 |
| 106 | 442 |
| 107 | 312 |
| 25 | 505 |
| 110 | 455 |
| 25 | 505 |
| 56a | 640 |
| 25 | 505 |
| 131 | 23 |
| 25 | 505 |
| 146 | 564 |
| 25 | 505 |
| 156 | 546 |

1. The second section of the act of February 23, 1853,* amendatory of the charter of St. Louis of March 3, 1851, is constitutional in so far as it required that in paying the value of land taken for the opening, widening or altering of a lane, alley, street, &c., the city should pay the value to the public generally of the proposed improvement, and that the balance should be assessed "against the owner or owners of the property fronting on such lane, alley, street, avenue, wharf or square, and in the blocks next adjacent, on either side or end thereof, according to the value of the property so assessed and in the proportion that the owners thereof may be respectively benefited by the proposed improvement."

2. Such assessments against adjacent owners in respect of the benefits received by them from the opening, widening or altering a street, &c., are a constitutional exercise of the taxing power.

---

* The following is the fourth section of the sixth article of the charter of St. Louis as amended by the second section of the act of February 23, 1853: "Sec.

*Error to St. Louis Land Court.*

This was an agreed case submitted to the St. Louis Land Court under article 20 of the practice act of 1849. The following is the agreed case as submitted : " The following facts are agreed upon between Peter Garrett, as plaintiff, and the City of St. Louis as defendant, and hereby submitted to the judge of said court for his decision thereon, which it is hereby agreed shall be entered as the judgment of the court, from which either party may apeal to the Supreme Court of the State. Under the charter, acts of the legislature, and ordinances of the city of St. Louis, the mayor was required to open Main street, and, in order to do so, to condemn whatever property it was necessary to take for that purpose; and on the 22d day of November, 1853, a jury was empanelled as the law directs to assess the value of the land so taken, who found that the land of said Peter Garrett, so taken to widen said street, was worth, without reference to the proposed improvement, the sum of $768.45, and that the buildings on the land so taken were worth $1440—making in the aggregate the sum of $2208.45. The same jury proceeded, according to the statute and ordinances in such case made and provided, to assess the benefits derived by property holders adjacent to said improvement, and they found that the lot of land belonging to said Garrett—off which the land valued as above

4. It shall be the duty of the jury first to ascertain the actual value of the land proposed to be taken for the opening, widening, or altering of a lane, alley, street, avenue, wharf or public square, without reference to the proposed improvement; then, for the payment of such sum, to assess against the city the value to the public generally of the proposed improvement, and to assess the balance against the owner or owners of the property fronting on such lane, alley, street, avenue, wharf or square, and in the blocks next adjacent on either side or end thereof, according to the value of the property so assessed and in the proportion that the owners thereof may be respectively benefited by the proposed improvement; and the sum or sums to be paid by the owner or owners of the property respectively benefited by the improvements, as ascertained by the jury, shall be a lien or liens upon the property so charged, and shall be collected as provided by ordinance. The verdict shall be signed by each juror and delivered to the mayor."

stated at $768.45 [was taken]—was benefited to the amount
of $763; so that, when he demands his money awarded to
him by the jury, the City of St. Louis refuses to pay unless
the benefits assessed against his lot are deducted, which
would leave coming to him $1445.45. He contends that the
city should pay him the full amount of the value of the land
and improvements, and insists that the assessment of benefits
is unconstitutional and void, and not in any way binding on
him. It is further agreed that the said Garrett, at the time
of the trial, insisted that the assessment of benefits as against
him was unjust, illegal and unconstitutional, and protested
against its being done. The city says it is legal and consti-
tutional, and that it should be deducted from the amount at
which his property was valued. The question now referred
to the court is whether the assessment of benefits under the
law is unconstitutional; and if the court find it is, then let a
judgment go against the city for only the sum of $1445.45,
and the judgment for costs against said Peter Garrett. The
question of interest in the [this] event is referred to the court.
If the court find that the assessment of benefits under the
statute is unconstitutional and therefore illegal, the judg-
ment shall be rendered against the city for the full amount
of $2208.45 and the costs."

The court rendered judgment against the City of St. Louis
in favor of Garrett for $1445.45, with interest from Novem-
ber 22, 1853, and against the plaintiff, Garrett, for the costs.
The court overruled a motion for a review made in behalf of
plaintiff Garrett.

*Hudson & Thomas*, for plaintiff in error.

I. So much of the act of February 23, 1853, as authorizes
the assessment on benefits is unconstitutional. (Constitu-
tion, art. 13, sec. 7; 2 Dall. 310; The People v. Mayor of
Brooklyn, 6 Barb. 209; 5 Dana, 28; Rice v. Turnpike, 7
Dana, 81.)

*Bay*, (city counsellor,) for defendant in error, cited 3
Watts, 292; 13 Pick. 60; 1 Green, 196; 1 Louis. 1; 8

Wend. 85; 15 Wend. 376; 24 Wend. 65; 7 Hill, 9, 23; 14 Ohio, 541; 5 Blackf. 384; The People v. Mayor of Brooklyn, 4 Comst. 420; Newby v. Platte County, 25 Mo. 258.)

NAPTON, Judge, delivered the opinion of the court.

The only question in this case is the constitutionality of the second section of the amended charter of St. Louis, passed February 23, 1853. This section, among other provisions, authorizes the city council to open a street; and when for this purpose it becomes necessary to take private property, it provides the following mode of ascertaining the compensation. After notice to the owner, the mayor is directed to empanel a jury, whose duty it is made to ascertain the actual value of the land proposed to be taken, without reference to the proposed improvement. To pay the sum thus ascertained the city is taxed in an amount equal to the value of the improvement to the public generally, and the remainder is assessed against the property fronting on such street, and in the blocks next adjacent, on either side or end thereof, "according to the value of the property so assessed, and in the proportion that the owners thereof may be respectively benefited by the improvements." Where, under this provision, the entire lot is taken for the street, it is plain that nothing more has been done than an exercise of the right of eminent demain, and in a mode in strict conformity to the constitution. The owner of the lot taken has no cause for dissatisfaction, since he is paid the full actual value of his lot; and the means adopted by the city to raise the funds for this payment are a matter of indifference to him. But where the entire lot is not taken, or where the owner has other land on the same street, the question arises whether he can be compensated in the mode provided by the charter.

That this assessment upon the lot owners fronting on the street is an exercise of the taxing power, seems too plain to admit of argument. Whether it is a *bona fide*, legitimate and constitutional exercise of that power is the matter to be considered; but that it is an attempt to exert this taxing power,

and not the power of eminent domain, may, I think, be assumed. In the case of Newby v. Platte County, this court held that the assessment upon land owners, whose lands were taken under our railroad laws, for sums proportioned to the benefit they received from the road, was an exercise of the taxing power; and without meaning to express any concurrence in or dissent from this view, it is clear that the position assumed in that case necessarily includes the assumption we have just made. The views entertained in that case were attended with difficulties which do not embarrass this. If the assessment for benefits in the case of the railroads was an exercise of the taxing power, then the tax was levied only upon those whose lands were taken, and not upon other lands abutting on the line of the roads where no part of them was taken by the companies. Here the assessment is upon all who own property on the street, whether any part of their property is taken for the improvement or not.

It is admitted on all hands that the power of taxation is confided to the legislative department of the government; and the manner in which it is to be exercised, the persons and things upon which it is to operate, are left entirely to the discretion and judgment of the legislature, except where the constitution has imposed restraints. The only provision on this subject in our constitution is " that all property subject to taxation in this state shall be taxed in proportion to its value." There is another provision in relation to property of the United States, but that has no bearing on the question now under consideration.

It may be doubted whether this provision of our constitution, requiring an *ad valorem* tax upon property when property is the subject of taxation, was designed to apply to local assessments for local purposes; whether it was not intended as a restraint upon the legislature only in passing general revenue laws. But waiving this question for the present, and conceding that the restriction applies to every kind of taxation upon property, it still remains to be considered whether the local assessment here disputed is a tax upon pro-

33—VOL. XXV.

perty within the meaning of the restrictive clause referred to ; and, if it is, whether the constitutional injunction has been disregarded in the provisions of the St. Louis charter.

This nineteenth section of our bill of rights does not deprive the legislature of any power of taxation, nor does it confer any. That department of the government possesses every species of taxing power with or without this clause. What shall be selected by the legislature as objects of taxation is as much within the discretion of that body, with this provision in the constitution, as it would have been without it. Where the legislature do, however, undertake to exercise one branch of the taxing power—that is, to levy a tax upon property—they must conform their action to this constitutional requisition. They must tax property according to its value, and not specially without regard to value. But when the legislature chose to exercise some other branch of the taxing power, they are left entirely untrammelled by this clause of the bill of rights. They may tax and do tax a variety of professions and pursuits and occupations ; and in such case their action is under no other control but such as responsibility to their constituents, a regard to their own interests, and a sense of duty, may create. It is true that in one sense all taxes may be said to be taxes upon property, since they are to be collected in money, and money is property. *Indirectly*, it is property that is reached by every species of taxation. Hence I have heard it maintained that a tax on a merchant's license is a tax upon property—seeing that the legislature, in fixing the amount of the taxes, have thought proper to regulate it by the amount and value of merchandise purchased or disposed of between certain intervals. And in this sense a tax *per caput* may be also called a tax upon property ; for a man's property and not his head can only be taken to pay it. But this is not the sense in which a property tax is to be understood when it is referred to in the constitution or legislative enactments.

In this case the city of St. Louis is taxed to the extent that she is benefited, and each owner of a lot fronting on the

street is taxed in proportion to the value of his lot and the benefit such improvement is to him. The tax is a combined one, based upon the present value and increased value produced by the improvement. The benefit for which the owner of the lot is taxed is not the benefit to the public at large, or to the city of St. Louis, or to any other person whatever, but to the owner of the lot. The phrases "benefits" and "increased value" may therefore be regarded as convertible terms; and if the constitutional provision referred to is to be considered as applicable to this kind of taxation, it would seem that the spirit, if not the very letter, of its injunctions has been embodied in the act. The tax is exactly proportioned according to the "*increased* value" of the lot, which is the same thing as the value of the "benefit" which the owner receives from the improvement.

It will be further observed that the tax in this case is not confined to the lot owner, a portion of whose lot has been taxed, but is levied upon all other lot-owners on the street, whether any portion of their lots is required for the improvements or not; and it is levied upon all according to the same rule of assessment. The compensation, which the legislature have provided for persons whose lands are taken for railroads, is diminished or abated by the benefits which the road confers upon him; and if this set-off is to be regarded as a tax, then it is levied only on those persons whose lands are taken, and not upon those whose lands lie directly on the side of the road, but through which the road does not pass. The St. Louis charter conforms more nearly to the spirit of the constitution, and is every way more just. Not only the citizen whose lot is taken, but every other lot owner on the street proposed to be opened, is taxed for the improvement, and the tax is apportioned according to the value of the lot and the value of the improvement to such lot.

The tendency of recent legislation, in states where great additions to population and wealth and multiplied railroads and other artificial channels of trade have induced caution, has been to exclude all considerations of benefit to the pro-

perty holder in computing the compensation to which he is
entitled when a portion of his property is taken from him by
the state in its exercise of eminent domain.  Here, as yet,
the question has been one of but little practical importance ;
and until very recently has scarcely ever been the subject of
litigation or investigation.  We have not as yet many miles
of railway, nor has the great body of land in the interior yet
attained great value.  By restricting the benefits, which the
legislature have declared may be set off against the value of
land taken for a public improvement, to such as are peculiar
to the land owner and not shared by others whose land is not
taken equally with him, growing dissatisfaction with existing
legislation will probably be checked.  It is evident that the
advantages or benefits spoken of must have some limit.  If
an owner of land on the line of a railroad, part of which was
taken for the road, should happen to own another tract half
a mile from the road, the benefits which this last tract would
receive from the improvement would not be considered ; and
yet such increased value of this second tract would be prac-
tically and in fact a benefit remotely derived from the road.
But the constitution intends to place the public burdens upon
all, and, to do this, pays the proprietor of land for what is
taken by the public.  If he is paid in advantages which the
community at large, whose land is not taken, enjoy equally
with himself, the spirit of the provision might be said to be
violated.  His loss is certain and specific, and in relation to
the land which is not taken he only receives the same benefit
which others receive who have sustained no loss.  These
views are very forcibly presented by Judges Tucker and
Brockenbrough in the case of the James River and Kanawha
Company v. Turner, 9 Leigh, 313.  The act of the Virginia
legislature, substantially like ours, declared that the valuers
" should combine therewith (that is, with the value and inju-
ries to the land taken) a just regard to the advantages which
the owner of the land will derive from the construction of the
road or canal."  In construing this, the court of appeals held
that the advantages alluded to, and which the assessor was to

Garrett v. City of St. Louis.

regard, were such advantages as particularly and exclusively affected the particular land, a portion of which was condemned, and not advantages of a general nature, which may be derived to the owner in common with the country at large from the improvement. Our construction of the railroad laws has been in accordance with this decision.

But whatever may be thought of the clauses of the railroad laws which allow the land owner to be compensated in benefits—whether they be held to be an exercise of the taxing power or of the eminent domain, and, if the former, whether they conform to the constitutional requisition in relation to property taxation or not—it is clear that the section of the St. Louis charter now under consideration operates by virtue of the taxing power, and we are also satisfied that it is no violation of the nineteenth section of the bill of rights. It conforms, as we have said, to the spirit of this constitutional provision; and if necessary we might go farther and declare that, in our judgment, the tax in question is not such a property tax as is within the meaning of that provision. The tax is local and for local purposes, and is a tax upon benefits and not directly upon property. It is based upon a principle which seeks not merely to avoid a breach of a constitutional restriction, but commends itself to our notions of equity and justice. The cost of the public benefit is made a public burden, and the expense of the individual benefit is placed upon the shoulders of the person who receives it. The question is not whether individual instances of injustice and oppression may not occur in the execution of this law; it is not whether the tax will produce perfect equality of burdens, nor whether the power entrusted to this corporation may not be abused. We know too well that, under any system of taxation, these things may and do happen. There are evils not within the power of courts to remedy. It is for the legislature to guard against them; and we must, in justice to them, say that this charter seems, in the provisions we have been called upon to consider, as carefully framed to prevent these evils as the nature of the case would permit.

We may add that, in support of the conclusions we have reached, there is a current of authority in the highest tribunals of other states scarcely interrupted by conflicting decisions. (The People v. Mayor of Brooklyn, 4 Comst. 420 ; Livingston v. Mayor, &c., 8 Wend. 101 ; Beekman v. Saratoga & S. R. R. Co. 3 Paige, 45 ; Stricker v. Kelly, 7 Hill, 9 ; Oaky v. Mayor, &c. 1 Louis. 1.)

The case of The People v. Mayor of Brooklyn, 6 Barb. 213, is the only case in New York, to which our attention has been directed, where the question has been directly determined in opposition to this view. That decision was reviewed and overruled by the court of errors ; which circumstance is calculated to destroy its authority in that state, but would not and ought not to impair its value here, if the reasonings and conclusions of the court were such as to command the assent of our judgment. But that, in my judgment, is not so ; neither the arguments nor conclusions are satisfactory. The court declare the power exercised by the legislature to be that of the eminent domain ; and this is true where any portion of a lot is taken for the improvement, but is plainly not true when the assessment is upon those whose lots are not touched. When such persons are assessed it can only be under the taxing power, since the power of eminent domain operates only on individuals and "without reference to the amount or value exacted from any other individual or class of individuals ;" but taxation "operates upon a community or upon a class of persons in a community, and by some rule of apportionment." When, therefore, it is clear that this assessment upon one class of lot holders is an exercise of the taxing power, there is no reason why it should not be held to be an exercise of the same power upon the other class, whose lots are taken under the power of eminent domain, and paid for according to their exact value. But it is further intimated in this opinion that local taxation for local objects must be extended so as to embrace all the persons and property within a district known and recognized by law as possessing a local sovereignty for local purposes ; and whilst it is not shown

that the constitution of New York contains any such restriction upon the power of taxation, the assumption might be conceded, and yet it would by no means follow that the courts were to determine how limited or how extensive such districts might be. In fact the Kentucky courts, who seemed at one time to have entertained similar views, at last came to the conclusion that the legislature might declare a single square or block or lot to be a district for such purposes. The value of the distinction in this way disappeared, since after all it turned out to be a mere matter of legislative discretion which the judiciary could not supervise or control. It is quite apparent that much of the reasoning of the supreme court, in this case of The People v. Mayor of Brooklyn, &c., is directed against the policy of exercising the right of eminent domain at all, and especially of entrusting its exercise to municipal corporations; and the hardship, inconvenience and injustice resulting from its exercise in individual cases are depicted by the court in vivid colors. But if the legislature have been entrusted with the power and must meet the responsibility of its exercise, such considerations are beyond the control of the courts.

Several decisions in Kentucky have also been referred to which maintain the views advanced by the supreme court of New York, in The People v. Mayor of Brooklyn; but as these decisions have been materially modified, if not virtually abandoned, by the same court, in the case of the City of Lexington v. McQuillan's Heirs, 9 Dana, 513, it is unnecessary to examine them. The other judges concurring, judgment affirmed.