. (September 29, 1917.)

C. G. BURT, W. W. NUSBAUM and F. G. PICKETT, Commissioners of Drainage District No. 1 of Canyon County, Appellants, v. FARMERS' CO-OPERATIVE IRRIGATION COMPANY, LIMITED, and NOBLE DITCH COMPANY, LIMITED, Respondents.

[00 Pac. 000.]

DRAINAGE DISTRICTS—LEGISLATIVE DISCRETION—LEGISLATIVE POWER— QUASI CORPORATIONS—CONSTITUTIONAL LAW—SPECIAL ASSESSMENTS —STATUTORY CONSTRUCTION—POLICE POWERS.

1. The drainage districts provided for by the laws of this state are *quasi* corporations, being public in their nature and designed to accomplish purposes conducive to the general welfare.

2. The methods of organizing drainage districts, their structure and the means and agencies by which they may accomplish their purpose are matters addressed solely to the legislative discretion, which discretion is not subject to review by the courts except to determine whether such legislation violates some constitutional inhibition.

3. Under the drainage law of 1913, prior to amendment, benefits were to be assessed upon the principles governing special assessments in local improvement districts and were required to bear some relation to the enhanced value of the tracts assessed.

4. The legislature of this state has power to provide that lands which by reason of artificial irrigation contribute by seepage and saturation to the swampy condition of low lands should contribute their just proportion of the cost of constructing works for the reclamation of such lower lands.

5. The common-law rule to the effect that one who diverts water from its natural course did so at his peril and became an insurer against any damage which might result from such action has been modified and relaxed in this state, so that negligence in constructing, maintaining or operating a ditch or canal must be shown as a basis for recovery of damages by persons injured.

6. It is within the legislative power of this state to restore the rule of the common law and render the person diverting water from its natural channel liable for any damages resulting from the escapement thereof.

7. So far as liability for injury caused by water diverted from its natural channel is concerned, no different principle exists between

water flowing upon the surface of the soil and that seeping or percolating beneath its surface.

8. The legislature having power to provide for the levy of the assessment, the law in question must be upheld, even though in providing for the execution of the power it may have confused the principles upon which the assessment was to be based.

9. A law will be sustained if it can be done without doing violence to constitutional limitations, and at the same time give effect to the evident purpose of the enactment.

10. The law permitting high lands irrigated by artificial means, which are responsible in part for the swampy condition of lower lands, to be assessed for a portion of the cost of constructing the drainage works, is an exercise of that power whereby the legislature provides the means and methods by which one may so use his own property as not to injure that of another.

11. What lands may be included within a drainage district and what lands may not is a question of legislative discretion, and has to do with the structure of the organization which the legislature proposes to create for the accomplishment of the general welfare, and is a question entirely distinct from that of the power of the district after its formation to levy assessments and the constitutional limitations, if any, upon such power.

12. It is not a valid objection to the establishment of a drainage district that a minority in acreage of the lands within its boundaries may receive no special benefit, as that term is used in the drainage district laws of this state.

13. In determining whether a majority of the lands in acreage included in a drainage district will be specially benefited by the construction of the works, the judge may take into consideration the responsibility of the high lands to the low lands for seepage and saturation by irrigation water.

14. It was the intention of the legislature to provide, if, by reason of carrying irrigation water through canals, seepage water escapes from the rights of way thereof and contributes to the waterlogged condition of the land in the proposed drainage district, that these rights of way should be assessed for their just proportion of the cost of constructing the drainage works the same as other high lands.

15. Under the plain language of the drainage district act, the assessments must be made against the tracts of land within the district and not against the person of the owner.

16. That portion of subdivision 5 of sec. 9 of the drainage district act of 1913 relating to assessments upon municipalities or corporations does not apply in the case at bar. The assessments

therein referred to are not to be made as benefits to any tract of land, but are to be made upon the theory of public benefits for which it is proper that municipalities or corporations should be assessed, to be paid out of the general fund of such municipalities or corporations.

17. The enhanced value of low lands should be taken into consideration in finally determining the proportion of the cost which tracts of land in the district must contribute to the construction of drainage works.

[As to lands which may be included in irrigation district, see note in **Ann. Cas.** 1916A, 1222.]

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Chas. P. McCarthy, Presiding Judge.

Proceedings upon the reports of commissioners of a drainage district. Judgment in favor of remonstrants. *Reversed.*

Harry S. Kessler, for Appellants.

"The word 'lands' includes the beds of non-navigable lakes and streams, and lands are none the less land for being covered with water." (1 Wash. Real Prop. 3; *Higgins Oil & Fuel Co. v. Snow* (U. S.), 113 Fed. 433, 438, 51 C. C. A. 267; *Montgomery County v. Cochran,* 121 Fed. 17, 21, 57 C. C. A. 261; *Orchard v. Wright-Bell-Dalton-Anchor Store Co.,* 225 Mo. 414, 20 Ann. Cas. 1072, 125 S. W. 486.)

The assessments should be against the corporations personally rather than against the land. The trial court held that these benefits are general benefits and not public, or special, and therefore should have been made against the lands solely and not against the corporations. This conclusion is clearly erroneous. There is a well-defined distinction in the law of taxation by assessment between general benefits and special benefits. (Page & Jones on Taxation by Assessment, 654.)

Personal assessments can be made. (*Storrie v. Cortes,* 90 Tex. 283, 38 S. W. 154, 35 L. R. A. 666; *Barber Asphalt Paving Co. v. St. Joseph,* 183 Mo. 451, 82 S. W. 64; *Pittsburg, C. C. & St. L. R. Co. v. Fish,* 158 Ind. 525, 63 N. E. 454; *Pitts-*

*burg, C. C. & St. L. Ry. Co. v. Taber,* 168 Ind. 419, 11 Ann. Cas. 808, 77 N. E. 741; *Pittsburg, C. C. & St. L. Ry. Co. v. Hays,* 17 Ind. App. 261, 271, 44 N. E. 375, 45 N. E. 675, 46 N. E. 597; *Lovenberg v. Galveston,* 17 Tex. Civ. App. 162, 42 S. W. 1024; *Franklin v. Hancock,* 204 Pa. 110, 53 Atl. 644; *Atchison, T. & S. F. R. Co. v. Peterson,* 5 Kan. App. 103, 48 Pac. 877, affirmed in 58 Kan. 818, 51 Pac. 290; *Elsner, Matter of,* 86 App. Div. 207, 83 N. Y. Supp. 670; *Rochester v. Rochester R. Co.,* 109 App. Div. 638, 96 N. Y. Supp. 152.)

The drainage law was enacted under the police power rather than the power of taxation. (*Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785.)

The amendment by sec. 9–A inserted an additional basis for levying assessments that is clearly within the police power. (Page & Jones, Taxation by Assessment, secs. 419, 420; *Donnelly v. Decker,* 58 Wis. 461, 46 Am. Rep. 637, 17 N. W. 389; *Zigler v. Menges,* 121 Ind. 99, 16 Am. St. 357, 22 N. E. 782; *Charleston v. Werner,* 38 S. C. 488, 37 Am. St. 776, 17 S. E. 33; *Billings Sugar Co. v. Fish,* 40 Mont. 256, 20 Ann. Cas. 264, 106 Pac. 565, 26 L. R. A., N. S., 973; *Chicago, Milwaukee & St. Paul R. Co. v. City of Janesville,* 137 Wis. 7, 118 N. W. 182, 28 L. R. A., N. S., 1124; *Town of Macon v. Patty,* 57 Miss. 378, 34 Am. Rep. 451; *In re Mingo Drainage Dist.,* 267 Mo. 268, 183 S. W. 611.)

Richards & Haga, McKeen F. Morrow and J. L. Eberle, for Respondents.

The drainage law of 1913 did not include irrigation canals or canal rights of way because they did not require drainage or diking and could not be benefited. (Ida. Sess. Laws 1913, c. 16, p. 58, secs. 1–4, 9, 10.)

The word "benefits" in the law of special assessments for public improvements and in the drainage law of 1913 means enhancement in value by reason of the construction of such improvement. (*Garrett v. City of St. Louis,* 25 Mo. 505, 69 Am. Dec. 478; *Metropolitan etc. Elevated Co. v. Stickney,* 150 Ill. 362, 37 N. E. 1098, 26 L. R. A. 773; Page & Jones, Taxa-

tion by Assessment, sec. 654; *Walker v. Jameson,* 140 Ind. 591, 49 Am. St. 222, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 680; 2 Cooley on Taxation, 3d ed., p. 1153; *Sears v. Board of Aldermen etc.,* 173 Mass. 71, 53 N. E. 138, 43 L. R. A. 834.)

Sec. 9a added to the drainage law by Laws 1915, chap. 42, is to be construed as merely an addition to the act of 1913, and should be harmonized with the other sections so far as possible, and does not change the definition of the word "lands" or the character of land that can be included in a drainage district. (Lewis' Sutherland Statutory Construction, secs. 368, 380; Idaho Const., art. 3, sec. 18.)

Assessments for local improvements such as those involved here must be levied against the property benefited and cannot be levied against the owners of such property personally. (*Asberry v. Roanoke,* 91 Va. 562, 22 S. E. 360, 42 L. R. A. 636; *Raleigh v. Peace,* 110 N. C. 32, 14 S. E. 521, 17 L. R. A. 330; *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785; *Macon v. Patty,* 57 Miss. 378, 34 Am. Rep. 451; *Craw v. Tolona,* 96 Ill. 255, 36 Am. Rep. 143; *Creighton v. Manson,* 27 Cal. 613, 628; *Ivanhoe v. Enterprise,* 29 Or. 245, 45 Pac. 771, 35 L. R. A. 58; *Brookings v. Natwick,* 22 S. D. 322, 133 Am. St. 927, 117 N. W. 376, 18 L. R. A., N. S., 1259.)

A legislative declaration that what is not a benefit in fact is a benefit in law is arbitrary, unconstitutional and void. (*Thibault v. McHaney,* 119 Ark. 188, 177 S. W. 877; *Coffman v. St. Francis Drainage District,* 83 Ark. 54, 103 S. W. 179.)

The assessments against respondents were based not on considerations of benefit to them, or their property, but solely upon considerations of benefit to the agricultural lands in the district by reason of the construction of the drainage system, and as such these assessments amount to a denial of due process of law and equal protection of the laws and to a taking of property without compensation. (*Myles Salt Co. v. Board of Commrs.,* 239 U. S. 478, 36 Sup. Ct. 204, 60 L. ed. 392; *Shaw v. Board of Commrs.,* 138 La. 917, 70 So. 910; *Blue v. Wentz,* 54 Ohio St. 247, 43 N. E. 493; *Zinser v. Buena Vista County Supervisors,* 137 Iowa, 660, 114 N. W. 51;

*Mason v. Fulton County Commrs.*, 80 Ohio St. 151, 131 Am. St. 689, 88 N. E. 401, 24 L. R. A., N. S., 903.)

B. F. Neal, *Amicus Curiae.*

RICE, J.—Drainage District No. 1, Canyon county, was organized by order of the district judge in March, 1915. The commissioners for said district were duly appointed, and in due time their report was filed with the court, in which report it was found that the respondent, Farmers' Co-operative Irrigation Company, was benefited by being relieved from responsibility for damage done to lower lands from seepage and saturation by irrigation water from its canals and the necessity of carrying off waste water to the extent of $100,000. An assessment was levied against the company in the amount of $20,000. The other respondent, the Noble Ditch Company, was found to be benefited for the same reason to the extent of $50,000, and assessed in the amount of $10,000. The tracts of land of respondents are described in the report. The respondent, Farmers' Co-operative Irrigation Company, has a right of way for its canal within the district, 7.61 miles in length and 100 ft. in width. The respondent, Noble Ditch Company, has within the district a right of way for its ditch, 7.41 miles in length, a portion of which is 100 ft. in width and the remainder 75 ft. in width.

The right of the drainage district to levy assessments against the respondents upon the tracts of lands mentioned above was before this court on a former appeal in the case of *In re Drainage District No. 1*, 29 Ida. 377, 161 Pac. 315. It was there directed that a full hearing be had upon the facts, in order that the law applicable to the case be determined. A hearing was had before Hon. Chas. P. McCarthy, one of the judges of the district court of the third judicial district, sitting for Hon. E. L. Bryan, judge of the seventh judicial district in and for Canyon county. The court filed its findings of fact and conclusions of law and entered judgment in favor of remonstrants and respondents and dismissed the proceedings as against them. The commissioners appealed

to this court, and the appeal is on the judgment-roll alone. Among the findings of fact and conclusions of law to be considered in connection with this appeal are the following:

## "FINDINGS OF FACT.

"IV. That the remonstrants herein, Noble Ditch Company, Limited, and Farmers' Co-operative Irrigation Company, Limited, are corporations duly organized and existing under and by virtue of the laws of the state of Idaho, not for profit, but for the purpose of more conveniently and economically maintaining and operating canal systems and distributing water therefrom to the land owners who actually own said canal systems, including the portions thereof lying within the boundaries of said drainage district, and who organized the remonstrants and constructed said canal systems, and have at all times used said systems and the water rights in connection therewith for their sole and mutual benefit and not for sale or rental.

"V. That the agricultural land within the boundaries of said drainage district, being all the land lying within said district, excepting the canals, ditches and rights of way within its boundaries, will, when all irrigated, contribute 16,000 acre-feet of seepage water per year to the wet and water-logged condition of the lands lying within the boundaries of said district.

"VI. That the canal of the remonstrant, Farmers' Co-operative Irrigation Company, Limited, contributes 1,032 acre-feet of seepage water per year to the wet and water-logged condition of the lands lying within the boundaries of said district.

"VII. That the canal of the remonstrant, Noble Ditch Company, Limited, contributes 1,000 acre-feet of seepage water per year, to the wet and water-logged condition of the land lying within the boundaries of said district. . . . .

"XI. That neither of said remonstrants received, or will receive, any special benefit or benefits from the proposed drainage, or the construction of the proposed drainage system.

"XII. That the only benefit that the lands, rights of way or easements of the remonstrants herein receive from the proposed drainage or the construction of the proposed drainage system must be based upon the physical responsibility for contribution of seepage water in the amount set forth in these findings."

## "CONCLUSIONS OF LAW.

"II. That the said acts under which the assessments in question were levied do not contemplate the inclusion of irrigation canals, such as those of the remonstrants herein, and the intention of the legislature in enacting said acts and the express language clearly exclude irrigation canals such as those of the remonstrants herein. . . . .

"IV. That the benefit contemplated by section 9a, 1915 Sess. Laws, chap. 42, p. 214, and received by remonstrants in this case, is a general benefit, and not a public or special benefit, and such benefit must be assessed against the land and not against the person.

"V. That if it should be held that canals are included under said section 9a, then the assessment against the remonstrants for seepage water contributed by their canals should be against said canals, and not against the remonstrants personally.

"VI. That physical responsibility for the contribution of seepage water to the wet or water-logged condition of land lying within the boundaries of a drainage district by land owned by a corporation within such district, is not a special or public benefit within the meaning of section 9 of subdivision 5, chap. 16, 1913 Sess. Laws, and is not assessable against such corporation personally.

"VII. That neither remonstrant herein is subject to any liability at law or equity by reason of contribution of any seepage water to the wet or water-logged condition of the land lying within the boundaries of said drainage district, other than any liability which may be imposed upon it by the drainage law.

"VIII. That in levying assessments against the lands, canals, ditches and rights of way within the boundaries of said drainage district, the board of drainage commissioners of said district, should have taken into consideration not only the relative contribution of seepage water, but also the enhanced value of the land lying within the boundaries of said district."

The drainage district law under which this action arose is chap. 16, Sess. Laws 1913, p. 58. Section 1 of that act specifies what land shall be included in drainage districts as follows:

"Any portion of a county requiring drainage or diking, or both, may be organized into a drainage district."

Section 2 sets forth what the petition to form such drainage district shall contain, the principal requirements being as follows:

"1. The object for the organization of the district.

"2. The boundaries thereof. ·

"3. Approximately the number of acres of land to be benefited by the proposed drainage system.

"4. The names of all freeholders residing within said proposed district so far as known.

"5. The names and postoffice addresses of owners and mortgagees of lands within the proposed district so far as known.

"6. A description of the proposed system of drainage or diking or both, designating the point or points if any there may be which shall be the outlet or outlets for the drainage of said district.

"7. The general route over which the main ditch or ditches are to be constructed.

"8. General location of the dike and levees if any there be.

"9. The further fact that the establishment of the said district and proposed system of drainage will be conducive to the public health, convenience or welfare or increase the public revenue, or that the establishment of the said district and said system of drainage and reclamation will be of special benefit to the majority of the lands in acreage included therein."

Section 3 provides for the giving of notice of the proposed hearing upon the organization of the drainage district, and also provides that—

" . . . . Upon final hearing said judge shall make such changes of the proposed boundaries as he may deem to be proper and shall establish and define such boundaries, and shall ascertain and determine the approximate number of acres of land which will be benefited by said proposed drainage system, and shall find whether the said proposed drainage system will be conducive either to the public health, welfare or convenience, or increase the public revenue, or be of special benefit to the majority of the land included within said proposed boundaries of said district as established."

Section 4 provides that—

" . . . . said judge of the district court of the county in which the proposed drainage district is located, if he finds said proposed drainage system to be conducive either to the public health, welfare or convenience, or will increase the public revenue, or be of special benefit to the majority in acreage of the lands included in said boundaries, shall declare said district duly organized, and to be known as Drainage District No. —— of the county of ——, in the State of Idaho, and within ten days thereafter shall appoint three drainage commissioners."

Section 9 provides for the report of the drainage commissioners, and specifies that such commissioners shall determine and report as follows:

"First: Whether the starting point, route and terminus of the proposed work and the proposed location thereof, is or are in all respects proper and feasible and if not, what is or are so.

"Second: The estimated cost of the proposed work, including all incidental expenses and cost of proceedings therefor.

"Third: The probable cost of keeping the same in repair after the work is completed.

"Fourth: What lands will be injured thereby and the aggregate amount of such injuries; and they shall award to

each tract, or lot, by whomsoever held, the amount of damage so determined by them.

"Fifth: What lands will be benefited by the construction of the proposed work, whether the benefits will equal or exceed the aggregate cost of constructing such work, including all incidental expenses, costs of proceedings and damages; and they shall apportion and assess the estimated costs of the same on the lands so benefited by setting opposite the correct description of each tract, lot or easement, the portion of such cost assessed as benefits thereon. And if any particular part of the work so proposed to be done shall be assessed upon any particular tracts or lots of lands or upon any municipality or corporation they shall so specify; and if any municipality or corporation should in their judgment bear a part of the expense or as such will derive a public or special benefit from the whole or any part of such proposed work, they shall so report and assess the amount of such benefits.

"Sixth: Whether the proposed district, as set out in the petition filed, will embrace all the lands that may be damaged or benefited by the proposed work, and if not, what additional lands will be benefited or damaged and the amount of the benefits or damages in the same manner as though such lands were included in such original petition."

Section 10 provides:

"If the commissioners shall find after the investigation referred to, that the costs, expenses and damages are more than equal to the benefits that will be bestowed upon the lands to be benefited, they shall so report and the proceedings shall be dismissed. But if the commissioners shall report that the whole cost of the work including preliminary surveys and expenses, legal assistance and court costs will be less than the benefits received therefrom, they shall so report to the court; and the court shall then make and enter an order fixing a time and place when and where all persons interested may appear and contest the confirmation thereof."

The legislature in 1915 passed an act, "amending chap. 16 of the Laws of 1913, . . . . by adding a new section thereto to be known as section 9a and by amending sections 7 and 24

thereof." (Sess. Laws 1915, p. 124.) Section 2 of this amendment, which includes section 9a, reads as follows:

"Sec. 9a. In determining the amount which each tract of land will be benefited by such proposed drainage system the commissioners shall consider the damage done to low land from seepage and saturation by irrigation water from high land and the necessity for the carrying off of waste water, and such high lands shall be considered as being benefited to the extent and in the amount that such lands are responsible for damage to low lands from seepage and saturation by irrigation water."

While the power of the legislature to provide for the organization of drainage districts is not directly called in question, some observations relative to this power and the basis on which it rests may be pertinent. In the case of *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785, where the drainage district law was first under consideration by this court, it was said that such law was an exercise of the power of the state for the general welfare. In *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369, in discussing the power of the state legislature to provide for the formation of irrigation districts, the court said:

"The case does not essentially differ from that of *Hagar v. Reclamation Dist. No. 108,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569, where this court held that the power of the legislature of California to prescribe a system for reclaiming swamp-lands was not inconsistent with any provision of the federal constitution. The power does not rest simply upon the ground that the reclamation must be necessary for the public health. That indeed is one ground for interposition by the state, but not the only one. Statutes authorizing drainage of swamp-lands have frequently been upheld independently of any effect upon the public health, as reasonable regulations for the general advantage of those who are treated for this purpose as owners of a common property. (*Head v. Amoskeag Mfg. Co.,* 113 U. S. 9, 5 Sup. Ct. 441, 28 L. ed. 889; *Wurts v. Hoagland,* 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. ed. 229; Cooley on Taxn., 2d ed., p. 617.) If it be essential or

material for the prosperity of the community, and if the improvement be one in which all the land owners have to a certain extent a common interest, and the improvement cannot be accomplished without the concurrence of all or nearly all of such owners by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their joint expense. In such case the absolute right of each individual owner of land must yield to a certain extent or be modified by corresponding rights on the part of other owners for what is declared upon the whole to be for the public benefit."

In the case of *Billings Sugar Co. v. Fish*, 40 Mont. 256, 20 Ann. Cas. 264, 106 Pac. 565, 26 L. R. A., N. S., 973, we find the following:

"Regarding this case as involving an important principle of constitutional law, and one of particular interest to all of the comparatively new states of the Union, we have quoted at length from the decisions of the courts of other states, in order to illustrate the principle seemingly running through all the cases, that the constitutional questions involved should be decided in the light of conditions existing in the particular state. The public policy of the different states has been dictated by and formulated upon such considerations. . . . . We know, of course, that Montana contains no vast areas of swamp-lands; and in this regard the physical situation is different from that upon which irrigation laws are designed to operate, but if the state contains any considerable area of marshy lands, to which this law may be applied, we think the principles upon which the two kinds of reclamation laws must rest for their validity are the same. The mere fact that our arid lands are greatly in excess of our marsh lands will not alter the situation so as to necessitate the application of different principles of law to the two cases. We must presume that the legislature in its wisdom has correctly determined that the state contains marsh lands of sufficient area to warrant the conclusion that their reclamation by drainage will redound to the public welfare, irrespective of any consideration of public health."

Having determined that the public welfare requires the organization of drainage systems, the legislature has provided the means by which they may be organized and the agencies through which they shall perform their functions. The drainage districts provided for are *quasi* corporations, being public in their nature and designed to accomplish purposes conducive to the general welfare. Their method of organization, their structure and the means and agencies by which they may accomplish their purposes, are matters addressed solely to the legislative discretion, which discretion is not subject to review by the courts except to determine whether such legislation violates some constitutional inhibition. (*Reclamation Dist. No. 70 v. Sherman,* 11 Cal. App. 399, 105 Pac. 277.)

The drainage district law of 1913, as it stood before amending, provided for assessments for the costs of the proposed works according to the benefits received by each tract of land assessed, except that if municipalities or corporations, in the judgment of the commissioners, should bear a part of the expense, or as such would derive public or special benefit from the whole or part of such proposed works, they should so report and assess the amount of such benefits. Under the law of 1913 the benefits were to be determined upon the principles governing special assessments in local improvement districts, and were required to be levied with relation to the enhanced value of the tracts assessed. This law was well adapted to the operations of districts where swampy conditions were due to natural causes. (2 Page & Jones, Taxn. by Assessment, secs. 651–653; 2 Cooley on Taxn., 3d ed., p. 1153; *Garrett v. St. Louis,* 25 Mo. 505, 69 Am. Dec. 475; *Metropolitan etc. Ry. Co. v. Stickney,* 150 Ill. 362, 37 N. E. 1098, 26 L. R. A. 773; *Sears v. Board of Aldermen, etc.,* 173 Mass. 71, 53 N. E. 138, 43 L. R. A. 834.)

The object sought to be accomplished by the addition of section 9a is not difficult to determine. We quote from the opinion of Mr. Chief Justice Sullivan in the former appeal (29 Ida. 393, 161 Pac. 320), as follows:

"It seems in this irrigated country the question of drainage is now confronting almost every irrigated section, and

there seem very cogent reasons for a return to the former rule above stated [referring to the common-law rule hereafter stated], at least to the extent of assessing lands for the construction of a drainage system from which seepage or percolation damages or injures other lands. The early settlers of the arid regions were not confronted with the question of drainage, but time and experience have proven that a drainage system is absolutely necessary where large areas of desert land are reclaimed by irrigation.''

And again 29 Ida., at p. 395, 161 Pac., at p. 321:

''It is a well-recognized fact that under many of the irrigation systems of our state thousands of acres of land which were reclaimed from an arid condition and which for a time produced valuable crops have now become alkalined or waterlogged, and thus ruined, and grow nothing but willows and tules because of the seepage of waters from canals and the irrigation of higher lands. And it certainly is not the public policy of the state to permit thousands, if not hundreds of thousands of acres of lands that were once productive, to be ruined and made worthless, and leave the owners thereof remediless.''

By section 9a the purpose was to require lands on higher levels, on which irrigation water might be brought by artificial means and which contributed to the swampy condition of lower lands by seepage and the percolation of water through the soil, to be assessed in a just amount for the construction of drainage works for the reclamation of such lower land. It is probable that the legislature was not considering the question of legal liability for damages at the suit of private individuals, and certainly it was not considering the question as to whether the seepage and percolation was due to negligence of the person bringing irrigation water upon the higher lands. By section 9a it is provided that such high land shall be considered as being ''benefited'' to the extent and in the amount such lands are responsible for damages to low lands from seepage and saturation by irrigation water. We have no doubt of the power of the legislature to provide that lands which by reason of artificial irrigation contribute by seepage

and saturation to the swampy condition of lower lands shall contribute their just proportion of the cost of the construction of drainage works for the reclamation of such lower lands. This court has held that an irrigation district may construct drainage works as a necessary complement of its irrigation system. (*Bissett v. Pioneer Irr. Dist.*, 21 Ida. 98, 120 Pac. 461; *Pioneer Irr. Dist. v. Stone*, 23 Ida. 344, 130 Pac. 382; *Nampa & Meridian Irr. Dist. v. Petrie*, 28 Ida. 227, 153 Pac. 425.)

Under the common law one who diverted water from its natural course did so at his peril, and was held practically to be an insurer against damage which might result from such action. (*Fletcher v. Rylands*, L. R. 1 Exch. 265, affirmed L. R. 3 H. L. 330; 1 Eng. Rul. Cas. 236; *Gorham v. Gross*, 125 Mass. 232, 28 Am. Rep. 224; *Shipley v. Fifty Associates*, 106 Mass. 194, 8 Am. Rep. 318; *Wilson v. City of New Bedford*, 108 Mass. 261, 11 Am. Rep. 352; *Mairs v. Manhattan Real Estate Assn.*, 89 N. Y. 498.) The common law has been modified and relaxed in this and other arid states, so that the owner of an irrigation ditch is only liable for damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining or operating the ditch. (*McCarty v. Boise City Canal Co.*, 2 Ida. 225, 245, 10 Pac. 623; *Stuart v. Noble Ditch Co.*, 9 Ida. 765, 76 Pac. 255; *City of Boulder v. Fowler*, 11 Colo. 396, 18 Pac. 337; *Howell v. Big Horn Basin Colonization Co.*, 14 Wyo. 14, 81 Pac. 785, 1 L. R. A., N. S., 596; *Fleming v. Lockwood*, 36 Mont. 384, 122 Am. St. 375, 13 Ann. Cas. 263, 92 Pac. 962, 14 L. R. A., N. S., 628; *Campbell v. Bear River etc. Mining Co.*, 35 Cal. 679; *Messenger v. Gordon*, 15 Colo. App. 429, 62 Pac. 959.) It would be quite within the power of the legislature to restore the rule of the common law and render the owner liable for any damages resulting from the escapement of water which he brings upon his land by artificial means. (*Northpoint C. I. Co. v. Utah S. L. C.*, 16 Utah, 246, 266, 67 Am. St. 607, 52 Pac. 168, 40 L. R. A. 851.) No difference in principle exists in this respect between water flowing upon the surface of the soil and that seeping or percolating beneath its surface.

(*Mallett v. Taylor,* 78 Or. 208, 152 Pac. 873; *Parker v. Larsen,* 86 Cal. 236, 21 Am. St. 30, 24 Pac. 989.)  No reason is apparent why the legislature may not restore the common-law rule in part or for some purposes only, as it undertook to do in section 9a.  But it is claimed that this liability cannot be enforced by assessment against the land under the denomination of "benefits"; that assessments for benefits could only be maintained where tracts of land assessed are enhanced in value, and many cases are cited to that effect.  Among the authorities so cited are *Garrett v. City of St. Louis, supra; Metropolitan etc. Ry. Co. v. Stickney, supra; Walker v. Jameson,* 140 Ind. 591, 49 Am. St. 222, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 680; *Sears v. Board of Aldermen, etc., supra.* The lawful purpose of such legislative enactment is not to be defeated through any technical construction of the language used.  The practical effect of requiring assessments to be made against the tract of land as a benefit, instead of creating a personal liability of the owner thereof, is to relieve the owner of the tract from any personal liability.  By a proper exercise of the police power of the state the owner of land might be held personally liable for any damage which results from his action in bringing water upon his land by artificial means.  If the legislature chose to provide for such liability only in connection with drainage districts and to limit assessments to the lands only and relieve the owners from personal liability, the owners cannot be heard to complain.  Nor must the legislation be held invalid because the legislature in terms provided for the enforcement of a liability as though it were a special benefit to the lands assessed, although the ground for the liability may be found in the police power of the state.  (*Donnelly v. Decker,* 58 Wis. 461, 46 Am. Rep. 637, 17 N. W. 389.)  The legislature having power to provide for the levy of the assessment, the legislation must be upheld, even though in providing for the execution of the power the legislature may have confused the principles upon which the assessment was to be based, and may have provided in the same act for the levy of assessments on the basis of benefits received and responsibility for injuries inflicted.

It is suggested that the language of the act does not permit of any such interpretation as we have given it above. Attention is called to section 10 of the 1913 act in which it is provided that if the commissioners find that the cost, expense and damages are more than equal to the benefits to be bestowed on the lands to be benefited, they shall so report and the proceedings shall be dismissed. From this provision it is argued that it necessarily follows that benefits mean enhancement in value of the lands of the district; that this is the only basis upon which benefits to be received can be estimated in money. A drainage district is a public *quasi* corporation. It lies with the legislature to determine when and under what circumstances the public welfare requires the organization of such a district. Even if it be conceded that for the purpose of determining whether a drainage district shall be organized the term "benefits" shall be construed to mean enhancement of value to the lands included within the proposed district, it does not follow that if it is determined that the conditions exist which justify the organization of a drainage district, the same meaning must be applied to the term "benefits" in the method thereafter employed to determine how the cost of the construction of the proposed drainage works shall be levied. It is true the act must be construed as a whole, but it is also true that the act must be construed so as to sustain the law, if it can be done without doing violence to constitutional limitations and at the same time give effect to the evident purpose of the enactment.

It is further suggested that the assessments provided for by the drainage district act are assessments for local improvements, and that to levy assessments on any other basis than that of enhanced value of the tracts assessed is unconstitutional, as being the taking of property without due process of law, or without compensation therefor, and many cases are cited in support of this contention. We cite as illustrative of the principle involved, *Myles Salt Co. v. Board of Commrs.,* 239 U. S. 478, 36 Sup. Ct. 204, 60 L. ed. 392; *Shaw v. Board of Commrs.,* 138 La. 917, 70 So. 910.

We do not consider that this legislation is contrary to the constitutional provisions urged. This is rather the exercise of that power whereby the legislature provides the method and manner by which one may so use his own property as not to injure that of another.

It is clear that the power to levy assessments against tracts of land in a drainage district is limited to the tracts of land included within the boundaries of such district, and the question then arises whether under the statute high lands not benefited by being enhanced in value may properly be included within the drainage district. The statute opens with the declaration that any portion of a county requiring drainage or diking or both may be organized into a drainage district. In section 2 of the act it is required that the petition for the formation of the drainage district must state that the said system of drainage and reclamation will be of special benefit to the majority of the lands in acreage included therein, and in section 3 of the act the district judge upon the hearing of petition is required to find whether the proposed drainage system will be conducive to the public health, welfare and convenience or increase the public revenue, or be of special benefit to a majority of the lands in acreage included within the boundaries of said district as established. In section 9 it is provided that the report of the commissioners must state whether the benefits will equal or exceed the aggregate cost of constructing such work, including all incidental expenses, costs of proceedings and damages, and in section 10 it is provided if the commissioners shall report that the whole cost of the work, including preliminary surveys and expenses, legal assistance and court costs, will be less than the benefits received therefrom, they shall so report to the court, and if the commissioners shall find after the investigation referred to that the costs, expenses and damages are more than equal to the benefits that will be bestowed upon the lands to be benefited, they shall so report and the proceedings shall be dismissed. Section 9a provides that in determining the amount each tract of land will be benefited by such proposed drainage system the commissioners shall consider the damage

done to low land from seepage and saturation by irrigation water from high land, and the necessity for carrying off of waste water, and such high lands shall be considered as being benefited to the extent and in the amount that such lands are responsible for damage to low lands from seepage and saturation by irrigation water.

It must be remembered that all questions relating to the determination of whether a drainage district, which is a public *quasi* corporation, shall be organized or not are questions directed to the legislative discretion. What lands may be included and what lands may not is a question of legislative discretion and has to do with the structure of the organization which the legislature proposes to create for the accomplishment of the general welfare, and is a question entirely distinct from that of the powers of a district after its formation to levy assessments, and the constitutional limitations, if any, upon such powers. It will be noted that the district may be organized if it be found that the proposed drainage system will be of special benefit to the majority of the land in acreage included within its boundaries. It is therefore not a valid objection to the establishment of a district that a minority of the lands in acreage within its boundaries may receive no special benefit as that term is used in sections 1, 2, 3, 9 and 10 of the act. But by the subsequent inclusion of section 9a into the drainage district law it becomes necessary to re-examine all the related provisions of the entire act in view of the substance inserted therein by section 9a. If section 9a is within the power of the legislature to enact, it is not unreasonable to hold that the meaning of the word ''benefit,'' as used in that section, shall give color to the meaning of the term ''benefits'' as used in all related provisions throughout the act. It is evident that the expression ''requiring drainage or diking,'' in section 1, is not to be construed as a limitation upon the area or character of land to be included within a drainage district, for the judge is not directed to determine whether a majority of the land requires drainage or diking, but to determine whether a majority of the land in acreage will be specially benefited by the drainage system.

As under section 9a lands may be considered as being benefited to the extent and in the amount that such lands are responsible to low lands from seepage and saturation by irrigation water, the judge of the court may take that responsibility for seepage and saturation into account in determining whether a majority of the lands included therein will be specially benefited by the construction of the works.

There can be no constitutional objection to including lands in drainage districts which may not be subject to assessment by the district. As to whether or not lands included shall thereafter be subject to assessment by the district is a question of fact to be determined by the method pointed out by the law itself. The law provides for ample notice to be given and ample means of determining the fact, and therefore the inclusion of land within a district does not in that respect deprive one of his property without due process of law.

Respondents' contention that canals or rights of way for canals are not included in the terms of section 9a is not well taken. Section 9 of the act of 1913 provides that the commissioners "shall apportion and assess the estimated costs of the same on the lands so benefited by setting opposite the correct description of each tract, lot or easement, the portion of such cost assessed as benefits thereon." Section 9a refers to "tracts of land." The rights of way of respondents are easements, but are permanent in their nature and are of such character that their owners have exclusive and continuous possession and control thereof. (See the case of *New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. ed. 407.) These rights of way are capable of description and may properly be called tracts of land. It was without doubt the intention of the law to provide that if by reason of carrying irrigation water through canals located on the rights of way described seepage water escaped from the rights of way and contributes to the water-logged condition of the land in the proposed drainage district, that these rights of way should be assessed their just proportion of the costs of the construction of the drainage works the same as other high lands. Under the plain language of the statute, how-

ever, the assessment must be made against the tracts of land included within the district and not against the person of the owner.

We do not think that portion of subdivision 5 of section 9 of the drainage district act of 1913 relating to assessments upon municipalities or corporations applies to such a situation as we have here. The public and special benefits referred to there which must be assessed to municipal or other corporations, we understand has reference to such public benefits as draining of swamps adjacent to a city or village, or schoolhouse, or the drainage of public roads of a county, where the public or a portion thereof is especially benefited, as distinguished from a benefit to a tract of land. These assessments are not to be made as benefits to any tract of land, but are to be made upon the theory of public benefits, specially applicable to a municipality or corporation, for which it is proper that the municipality or corporation should be assessed, such assessment to be paid out of the general funds of such municipality or corporation.

It follows from the foregoing discussion that the rights of way for the canals belonging to the respondents are subject to assessment for their proper portion of the cost of the construction of the drainage works of the district. Apparently, however, the commissioners of the district did not properly use all the elements to be taken into consideration in determining what that proportion should be. The proportion should not be determined alone by the amount of seepage water which causes the wet and water-logged condition of the low lands of the district. The low lands will be enhanced in value and some of such lands may be greatly benefited by drainage even if they had remained in their natural condition. Such enhanced value should be taken into consideration in finally determining the proportion of the cost each tract of land in the district must contribute to the construction of the drainage works.

The judgment is reversed and remanded to the trial court, with directions to modify its findings of fact and conclusions of law and determine the amount of the assessment to be

774  BURT *v.* FARMERS' CO-OPERATIVE IRR. CO., LTD.  [30 Idaho,

Opinion of the Court—Budge, C. J., Concurring and Dissenting.

levied against the rights of way of the respondents in accordance with the views herein expressed. No costs awarded.

Morgan, J., concurs.

BUDGE, C. J., Concurring in Part and Dissenting in Part. I concur with my associates to the extent of holding that sec. 9a, chap. 42, Sess. Laws 1915, is a valid and constitutional exercise of the police power by the legislature. To my mind it is well within the constitutional power of the legislature to require high lands or even canals or irrigation systems to contribute to the reclamation of low and water-logged lands to the extent that such high lands and canals and irrigation systems are responsible for damage to such low lands from seepage and saturation by irrigation water, and, as has been so ably indicated in the majority opinion, the constitutionality of such an act is supported by two sound legal propositions: First, as a valid exercise of the police power; second, as a return or partial return, with the necessary appropriate modifications, to the common-law liability, long since departed from in the arid states, under the general power of the legislature to define the public policy of the state as changing conditions, in its wisdom, seem to warrant, and to continue in force, abrogate or return to operation the princ*i*les of the common law in whole or in part, whether departed from by judicial fiat or legislative enactment.

I am unable to concur, however, in that portion of the majority opinion which holds that the words "high land" and "high lands" as used in sec. 9a were intended to include canals and irrigation systems. Neither do I think that canals or rights of way for canals are "tracts of land" within the meaning of the act of 1913, or sec. 9a, amendatory thereof in the laws of 1915, but the words "tract of land" refer to tracts of lands as commonly understood. That is to say, if one were speaking of tracts of lands one would not be understood to mean canals or rights of way for canals, no more than one would be understood to mean canals or rights of way for canals, if speaking of "high land," "high lands"

or "low lands," as such terms are used and understood in their common acceptation. These words can have no possible reference to canals or rights of way for canals. The legislature could, in my judgment, use no language which would have more clearly excluded canals and rights of way for canals, from assessments by a drainage district than that employed in the act. As I understand it, it is conceded that the drainage act of 1913, rendered liable to assessment only such land within a drainage district as required drainage or diking or both, and which was in need of and would be actually benefited, by enhancing its value, by drainage. And a careful study of sec. 9a convinces me that it was the intention of the legislature to subject all high lands irrigated within such drainage district to assessment, irrespective of its enhancement in value, but which contributed by reason of its irrigation to the seepage or water-logged condition of low lands.

The exact wording of sec. 9a is as follows: "Sec. 9a. In determining the amount which each tract of land will be benefited by such proposed drainage system the commissioners shall consider the damage done to low land from seepage and saturation by irrigation water from high land, and the necessity for the carrying off of waste water, and such high lands shall be considered as being benefited to the extent and in the amount that such lands are responsible for damage to low lands from seepage and saturation by irrigation water."

To my mind the words "high land" and "high lands" as they appear in the above section clearly refer to irrigated lands. Had the legislature intended to include canals and irrigation systems in this section the language of the section would have so stated in clear and unmistakable terms. Counsel have by way of analogy called our attention to sec. 1, art. IV, chap. 147, Montana Sess. Laws, 1915. The distinction between this section of the Montana law and sec. 9a of our own law is so marked and tends to illustrate so clearly the point at which my associates and myself diverge that I am constrained to set forth at length the material portion of the Montana section, as follows:

"Art. IV, Section 1. . . . . In apportioning such cost to defray the expenses involved in the construction of the drain, the following principles shall be regarded, and assessments made in accordance therewith:

"All lands which are swampy, bogged or water-logged and will be relieved and improved by virtue of the construction of the drain;

"All lands which are becoming, or are liable to become, swampy, bogged, or water-logged, and which the construction of the drain will prevent from being thus affected;

"All lands included within the watershed of the drain;

"All lands from which surface or seepage waters will enter the drain, or can be conducted into the drain;

"All lands upon which or through which, surface or seepage water will be prevented from flowing, or can be prevented from flowing by virtue of the construction of the drain;

"All lands which will sustain any direct benefit of any kind or character whatsoever, other than that sustained by all other lands in the same vicinity;

"All railways, whether operated by steam, electricity or otherwise, whose right of way or roadbed will be benefited or can be benefited by reason of the construction of the drain;

"All owners of irrigation ditches or canals from which water seeps, drains or wastes to, upon or through lands included within the district served by the drain; . . . . "

It will be noticed that the above act specifically includes not only swampy, bogged or water-logged lands or lands which were liable to become so, all lands within the watershed of the drain, all lands from which seepage will enter the drain, all lands where surface or seepage water will be prevented from flowing, lands which will sustain any direct benefit, railway rights of way or roadbeds that will be benefited, which would seem to include every character of land which could be included within the boundaries of a drainage district, but specifically inserted the provision, "all owners of irrigation ditches or canals from which water seeps, drains or wastes to, upon or through lands included within the district served by the drain." It would have been an easy matter for our own

legislature to have specified in a like or similar manner irrigation ditches or canals, if such had been the intention, and the fact that this was not done persuades me that the legislature did not intend to include canals or irrigation systems.

I think we should presume that the legislature used the words "high land" and "high lands" as such words are commonly understood and in their ordinary acceptation. Irrigation systems and canals have a commonly accepted significance and no one would ordinarily understand that by the use of the term "high lands" canals or irrigation systems were intended. As I have indicated, I do not doubt the authority of the legislature to include irrigation systems and canals and to make them respond according to the measure of their physical responsibility along with high lands and low lands, if such were the intent, but in so doing some appropriate language should be used which on its face would bear that interpretation. It should be remembered that appellant seeks to assess respondents' irrigation canals, not only in the absence of resulting benefits, but, on the contrary, for the creation of a drainage system, which, in all probability, will result in a positive detriment to the canals, by reason of increased loss from seepage. If such special assessments are to be imposed under the police power, or for the general welfare, or upon the theory that one should so use his own property as not to injure his neighbor, there should be express and positive statutory authority for so doing, and nothing should be left to implication. "Judicial judgment should not be substituted lightly for legislative judgment."

I cannot bring myself to believe that the legislature in using the words "high land" and "high lands" ever intended to include therein or to mean thereby canals or irrigation systems, and I do not feel that what to my mind is the plain and unmistakable meaning of the language used should be extended either by implication or by judicial construction. In order to make sec. 9a mean what the majority opinion has interpreted it to mean, it seems to me that it is necessary by a process of judicial construction to read into the act language similar to that used in the Montana act above quoted, namely,

"all owners of irrigation ditches or canals from which water seeps, drains or wastes to, upon or through lands included within the district served by the drain." This I am unable to do. Viewing the question in this light, I have felt constrained to record my dissent.

The judgment of the trial court, excluding the canal companies and relieving them from liability to assessment, should be affirmed.

(Petition for rehearing denied.)