**Mary J. Cocot, Appellant, v. Board of Commissioners of Cook County et al., Appellees.**

### Gen. No. 36,078.

Opinion filed December 13, 1933.

ALBERT C. BOEHM and JOSEPH B. LOFTON, for appellant.

JOHN A. SWANSON, State's Attorney, JOHN E. PEDDERSON and LOUIS H. GEIMAN, Assistant State's Attorneys, for appellees; HAYDEN N. BELL, Assistant State's Attorney, WALTER BACHRACH and PHILIP M. GLICK, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Cook county dismissing a bill for want of equity, wherein complainant, a taxpayer, prays that an injunction issue restraining the board of commissioners of Cook county from appropriating moneys for the payment of employees and the cost of maintaining the

public defender division of the criminal court of Cook county, restraining the county clerk from issuing warrants for such purpose, and the county treasurer from paying out any moneys for such purpose, upon the theory that such appropriations and payments are unauthorized by law. The bill further asks that an accounting be had for all the moneys previously paid out for such alleged purposes, and that certain named members of the board of commissioners of Cook county, the county clerk and the county treasurer be required to account for and pay into the county treasury of such county all moneys so alleged to have been illegally paid out by them or authorized to be so paid out for the purpose mentioned.

It is alleged in the bill that on February 28, 1931, the board of commissioners of Cook county by resolution that day adopted by such board, appropriated out of public funds the sum of $26,420 to pay the salaries and wages of and the expense incident to the maintenance of the public defender division of the criminal court of Cook county; that at the time the bill was filed, $17,050 of such fund had been paid out, leaving an unexpended balance of $9,370.

Defendants filed an answer to the bill, wherein it is admitted that the appropriation was made and partially paid out as alleged, set forth certain alleged facts in defense and denied that the complainant is entitled to the relief prayed. To the answer complainant filed a general replication.

After issues joined in this court, and after the abstracts and briefs of the respective parties had been filed, appellant moved that the appendix to appellee's brief and argument, consisting of pages i and ii and pages 61 to 86, inclusive, be stricken from the brief. This motion has been reserved to the hearing. These pages consist of extracts and quotations from various lay publications on the question as to whether or not

appropriations and payments of public funds for the defense of indigent persons charged with the commission of crime are advisable, necessary and justifiable. The matter contained in these quoted documents is very interesting and illuminating and might well have been presented to the General Assembly, but none of the matter contained in the pages referred to is authority, nor has it any bearing upon the questions raised here. The motion is, therefore, allowed.

On July 6, 1933, an Act of the General Assembly of the State of Illinois entitled "An Act in relation to the office of public defender in counties containing more than 500,000 inhabitants" was approved by the Governor of the State, and is now in force, giving the board of commissioners of Cook county the power to appropriate moneys for the purpose of furnishing counsel for indigent persons charged with the commission of crime. Cahill's St. ch. 37, ¶ 539 *et seq.*

On July 18, 1933, appellee filed in this court a motion to dismiss this appeal upon the theory that because of the passage and approval of this act, the matter before this court has now become moot, and presents no issue which requires review and decision. We are unable to agree with counsel that the passage and approval of this act makes the issue raised here merely a moot question, and this motion to dismiss the appeal is denied.

In 1925 (Laws of 1925, p. 264, Cahill's St. ch. 23, ¶ 446 *et seq.*) the General Assembly of the State of Illinois passed, and the Governor approved, "An Act to create, establish and maintain in counties having a population of 500,000 inhabitants or more, a bureau of public welfare, in aid of the powers and duties of such counties, and the powers, functions and authority of courts of record in such counties relative and pertaining to social service functions of said counties and said courts." Section 2

of the above mentioned Act, Cahill's St. ch. 23, ¶ 447, provided that: "The term 'Social Service Functions' employed and used in this Act shall be construed to embrace and include all powers, functions and duties of social service investigators and other social service officers and employees of said counties, authorized, conferred or imposed by law and pertaining to—

"(1) dependent children

(2) blind adults

(3) feeble-minded persons

(4) deaf and blind children

(5) paupers

(6) adoption of children

(7) insane persons

(8) illegitimate children

(9) minors

(10) Cases involving social, economic and home conditions, non-support, desertion and abandonment where the aid of the county or the jurisdiction of a court of record is invoked.

(11) The furnishing of social service and making provision of aid, food, clothing, medical attention or *other relief* to all persons in said county applying for or in need thereof." (Italics ours.)

In their answer it is claimed by defendants that the furnishing of legal aid to indigent persons charged with the commission of an offense against the State is authorized by the provisions of this act for "the furnishing of social service and making provision of aid, food, clothing, medical attention or *other relief* to persons in said county applying for or in need thereof,"; that the words "other relief" in the Act are authority for the making of such appropriations and the paying

out of public moneys so appropriated for such purpose. It is also the claim of defendants that under the law, it is essential that a defendant in a criminal case be represented by competent counsel; that the furnishing of such counsel to indigent defendants is a form of social service contemplated by this Act, and that, therefore, the board of commissioners of Cook county in providing such counsel and appropriating money out of public funds in the manner adopted, was in the performance of and is a part of their duty, therefore, authorized and justified.

As part of the defense to the bill filed herein, section 2, paragraph 754 of chapter 38, Cahill's Illinois Revised Statutes, is set forth as follows:

"Every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense. In all cases, counsel shall have access to persons confined, and shall have the right to see and consult such persons in private.

"Whenever it shall appear to the court that a defendant or defendants indicted in a capital case, is or are indigent and unable to pay counsel for his or her defense, *it shall be the duty* of the court to appoint one or more competent counsel for said defendant or defendants, who shall receive a reasonable sum for services, not to exceed fifteen dollars ($15.00) per day, for a period not exceeding five (5) days for necessary work performed in the preparation of said defense, and in addition thereto, not to exceed twenty-five ($25.00) per day, for each day actually occupied in the trial of said case, and the court shall, upon an accurate and true statement of services rendered, in writing, under oath, by such counsel, enter an order for said reasonable compensation, the total of which shall not exceed the sum of two hundred fifty dollars ($250.00) for any defendant, directing the county treasurer of

the county to pay the same, whether the said defendant is convicted or acquitted; Provided, however, that no extra compensation shall be allowed in behalf of a defendant, if more than one counsel appear for said defendant." (Italics ours.)

This act also provides as follows:

"In the event a writ of error is prosecuted and allowed by the Supreme Court and made a supersedeas for a capital offense when the sentence is death, the Supreme Court shall determine what reasonable compensation, if any, shall be allowed counsel for an indigent defendant, for services rendered in said case at the final disposition thereof, not to exceed the sum of two hundred fifty dollars ($250.00), and said court shall enter an order directing the county treasurer of the county where said case was tried, to pay the amount thereby allowed by said court." Cahill's St. ch. 38, ¶ 754 (1).

It is set forth in said answer that paragraph 828 (1) of chapter 38, Cahill's Illinois Revised Statutes, provides:

"In any prosecution for a capital offense, where the sentence is death, the trial court, if satisfied that the person convicted is a poor person and unable to prosecute his writ of error and pay the costs and expenses thereof, shall enter an order that such person be allowed to prosecute his writ of error as a poor person and thereupon all necessary costs and expenses incident to such writ of error, including all court costs, stenographic services and printing, but not including fees or compensation for legal services, shall be paid by the county in which the conviction was had, upon the approval of the judge of such court."

The answer further alleges that beginning with October 1, 1930, and ending September 30, 1931, the public defender's office defended 55 homicide cases and thereby saved the county, by reason of the fact that the county in said cases was not obliged to pay other

counsel for the defense of these cases, approximately the sum of $13,750. It is further alleged in the answer that because of the public defender's office securing trials without juries in 756 cases during said period, a saving estimated to be upward of $150,000 was thereby effected as a direct result of the work of the public defender's office, and that because of these alleged savings the complainant herein has no right of action because of the fact that in the creation of the public defender's office and the payment of the moneys therefor, complainant has been financially benefited rather than hurt.

The Supreme Court, in *Dudick v. Baumann,* 349 Ill. 46, said:

"The right of a taxpayer to prevent misappropriation of public funds has always been recognized by this court on the grounds that in equity taxpayers are considered the owners of the property of the municipality, and whenever public officials threaten to pay out general public funds for a purpose unauthorized by law, or misappropriate such funds, *and thereby cause taxes to be levied to make good the misappropriation,* equity will assume jurisdiction to prevent such unauthorized act, as the taxpayers' right in such case is not recognized by courts of law. (*Fergus v. Russel,* 270 Ill. 304; *Jones v. O'Connell,* 266 id. 443; *Burke v. Snively,* 208 id. 338; *Beauchamp v. Kankakee County,* 45 id. 274; *Colton v. Hanchett,* 13 id. 615.)" (Italics ours.)

The right of a taxpayer to maintain a suit in chancery to enjoin and prevent the misappropriation of public funds is undoubted if he is subject to pecuniary loss thereby, but in the instant case, if the alleged facts set up in the answer are true, it may be that the taxpayer will not suffer such a loss.

By both the bill and answer it is indicated that of the $26,420 appropriated for the purpose of paying the salaries and expenses of the public defender's divi-

sion of the criminal court of Cook county at the time the bill was filed, $17,050 of such fund had already been expended, leaving an unexpended balance of $9,370 at the time the bill was filed, and it seems not to be disputed that an injunction will not issue to restrain the doing of an act which has already been done.

If it is true that during the period for which the alleged illegal appropriation was made, the public defender—in each case being appointed by the court,— defended 55 murder cases, when under the statute it was the duty of the board of commissioners of Cook county to make a minimum appropriation and payment for the employment of counsel for such purpose of $250 for each case, or $13,750, then this is a fact for the court to consider in passing upon the issues raised in this proceeding. It is also set forth in the answer that the work of the public defender's office resulted in a saving to the taxpayers of Cook county of many thousands of dollars in various other ways. This is also a question to be considered upon a hearing. This court holds that the board of commissioners of Cook county was without power to create the department mentioned, and that the bill filed states a cause of action in equity, but as stated, the question as to whether or not complainant might suffer a pecuniary loss by any such an appropriation and can maintain her bill, presents a question of fact. The only question urged on the hearing was whether or not the board of commissioners of Cook county had the power to create the office of the department of public defender and to make the appropriations therefor, and the only questions considered by the court were whether or not there was equity in the bill and whether or not a temporary injunction should issue. The cause was submitted to the court on the bill, answer and general replication. The decree and order from which this appeal is taken is that the temporary injunction prayed for be denied, and that the bill of complaint, as amended, be dis-

missed for want of equity, and in this, the court was in error.

In *Leonard v. Arnold*, 244 Ill. 429, the Supreme Court held that "On a motion for a preliminary injunction, a bill in chancery will not be dismissed unless the injunction is the only relief sought. (*Hummert v. Schwab*, 54 Ill. 142; *Brockway v. Rowley*, 66 id. 99.)"

In *Brill v. Stiles*, 35 Ill. 305, we find the following: "According to the uniform practice in courts of chancery, the equity of a bill can only be questioned on demurrer or on the hearing. Whether a bill shows a right to relief cannot be determined upon motion. In this case the cause should have been set down for hearing upon bill, answer, replication and proofs."

In *Vanderpoel v. Cravens*, 139 Ill. App. 463, this court said: "A bill may be dismissed on the call of the docket for want of prosecution, but we know of no authority for the dismissal thereof for want of equity, after answer filed, without a hearing upon the merits."

For the reasons herein set forth, the decree of the circuit court is reversed and remanded for a hearing upon the issues joined.

*Reversed and remanded.*

WILSON and HEBEL, JJ., concur.